PINKERTON & LAWS, INC., Plaintiff,

v.

ROYAL INSURANCE COMPANY OF AMERICA and Maryland Casualty Company, Defendants.

No. CIV.A.1:01–CV0890RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 11, 2002.

J. Benn Shapiro, Jr., Ronald Alston Williamson, Shapiro Fussell Wedge Smotherman Martin & Price, Atlanta, GA,

Michael J. Athans, Andrew R. Diamond, Lord, Bissell & Brook, Atlanta, GA, Frank C. Bedinger, III, Heather C. Wright, Hawkins & Parnell, Atlanta, GA, Stephen Michael Schatz, Swift, Currie, McGhee & Hiers, Atlanta, GA, for defendants.

### *ORDER*

STORY, District Judge.

Now before the Court for consideration are Defendant Royal Insurance Company's Motion for Summary Judgment [11–1], Defendant Maryland Casualty's Cross–Motion for Summary Judgment Against Royal and Motion for Summary Judgment Against Pinkerton & Laws [22–1], Plaintiff's Motion for Partial Summary Judgment Against Maryland Casualty Company [29–1], Plaintiff's Motion for Leave To File Supplemental Memorandum of Law [32–1], and Royal Insurance Company's Second Motion for Summary Judgment [39–1]. After reviewing the record and considering the parties' arguments, the Court enters the following Order.

### BACKGROUND

On May 15, 1995, Pinkerton & Laws, Inc. ("P & L" or "Plaintiff") entered into a contract with Medalist Golf Company–Hobe Sound Partners, Ltd. ("Medalist") to construct a golf clubhouse in Hobe Sound, Florida. As part of its obligations under the construction contract, P & L was required to provide and install windows in the clubhouse. P & L subsequently entered into a subcontract with Oliveri Woodworking, Inc. ("Oliveri") to manufacture windows for the clubhouse, and P & L also entered into a subcontract with Treasure Coast Builders Services, Inc. ("Treasure Coast") to install the windows.

At all times relevant to the construction of the clubhouse, Maryland Casualty Company ("Maryland Casualty") insured Treasure Coast, the subcontractor, and P & L, the general contractor, was the additional insured for general liability coverage for work performed by Treasure Coast on the clubhouse. In addition, Royal Insurance Company of America ("Royal") provided general liability coverage to P & L.

Following the completion of the clubhouse in July 1996, Medalist notified P & L that the windows were rotting and required replacement. The August 13, 1996, punchlist from the Medalist Golf Club to P & L noted a leakage problem in all of the clear story windows in the clubhouse. Medalist wrote to P & L again on September 11, 1996, updating the list of items needing repair, and windows were still on the list.

More than two years later, in a letter dated November 2, 1998, Medalist wrote P & L about the "substantial construction deficiencies relating to windows throughout the Clubhouse." Medalist had concluded that the leakage resulted because "the window structures in the clear story and the joint work around the windows and the base of the clear story structure were not constructed according to specifications . . . ." In this letter, Medalist informed P & L that it had removed one of the deteriorated windows and "determined that the proper amount of flashing called for at the base of the window which is integral to the sealing process was not installed." Medalist demanded that P & L pay for the window replacement and threatened litigation. (Letter from Erickson to Jernigan of 11/2/98, at 1 (Royal's Mot. For Summ. J., Ex. E).)

On November 19, 1998, P & L forwarded this information to Treasure Coast and

copied Treasure Coast's agent for the Maryland Casualty policy. This letter notified Treasure Coast and its insurer of Medalist's claim of "substantial deficiencies in the material, installation, and painting of the windows . . . ." (Letter from Jernigan to Treasure Coast of 11/19/98 (Royal's Mot. For Summ. J., Ex. F).) Approximately a month later, on December 7, 1998, Medalist sent its final demand letter to P & L to "make immediate arrangements to repair all defective work . . . ." (Letter from Erickson to Jernigan of 12/7/98 (Royal's Mot. For Summ. J., Ex. H).) P & L informed its insurance representative of the complaints relating to the alleged defects in the windows at the clubhouse in a letter dated July 12, 1999. (Letter from Jernigan to McCullough/Corroon of 7/12/99 (Royal's Mot. For Summ. J., Ex. I).) P & L's insurance representative informed Royal of the claim on July 13, 1999.

Thereafter, Medalist commenced an arbitration action against P & L, and P & L commenced third-party actions against Treasure Coast and Oliveri to recover the costs of replacing the windows. On May 8, 2000, Medalist, P & L, and Treasure Coast entered into a settlement agreement wherein P & L agreed to pay Medalist $68,000, and Treasure Coast, through its insurance carrier, Zurich Insurance Company, agreed to pay Medalist $20,000. Royal was not a party to the settlement agreement.

After the settlement, P & L sought indemnification from Maryland Casualty because P & L contends that the rotting windows and resulting damage were caused by Treasure Coast's improper installation of metal flashing and sealant on the windows. P & L also sought indemnification from its insurer, Royal. P & L seeks payment from Maryland Casualty and/or Royal in the amount of $112,329.62 ($68,000 for its portion of the settlement and $44,329.62 in attorneys' fees and expenses it incurred defending against Medalist's claims). After its claims for indemnity were denied, P & L filed this action against Royal and Maryland Casualty [1] alleging breaches of insurance contracts and requesting expenses of litigation under Georgia Code section 33–4–6.[2] Royal and Maryland Casualty move for summary judgment, and P & L moves for partial summary judgment against Maryland Casualty.

## DISCUSSION

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

1. Although Zurich Insurance Company ("Zurich") was named as a defendant in the Complaint, P & L dismissed Zurich without prejudice on May 11, 2001.

2. In the first Complaint, P & L asserted Counts III and IV for litigation expenses under Georgia Code section 13–6–11. (Compl.¶¶ 30–35.) However, after discovering that Georgia Code section 33–4–6 preempts section 13–6–11 in the context of claims for an insurer's alleged bad faith refusal to pay insurance claims, P & L amended the Complaint. P & L replaced Counts III and IV with new Counts V and VI to assert claims for litigation expenses under Georgia Code section 33–4–6. (Am.Compl.¶¶ 36–43.)

317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Royal filed the first motion for summary judgment, in which it contends that any insurance coverage provided by Royal's policy is excess to Maryland Casualty's insurance coverage. Because one of Royal's arguments hinges on whether Maryland Casualty's policy provides coverage to P & L, the Court will address Maryland Casualty's and P & L's cross-motions for summary judgment before considering Royal's motion for summary judgment.

### A. Maryland Casualty's and P & L's Cross–Motions for Summary Judgment

Maryland Casualty moves for summary judgment on Count II (Breach of Contract) and Count VI (Expenses of Litigation) of the Complaint. The Court will address each of these counts separately.

### 1. Count II: Breach of Contract

■ Initially, the Court notes that P & L's coverage under the Maryland Casualty policy is derivative through Treasure Coast. Under the terms of the Maryland Casualty policy, an entity that enters into a "work contract" with Treasure Coast is also an insured if it requires in the "work contract" that it be made an insured under the Maryland Casualty policy. (Maryland Casualty's Commercial Gen. Liab. Coverage Form at II.2.f.) Thus, P & L is an insured under the Maryland Casualty policy because it entered into a subcontract with Treasure Coast, and the contract required that P & L be made an insured

under Treasure Coast's general liability insurance policy. However, although P & L is an insured under the policy, it "shall be an insured only with respect to covered ... 'property damage' which results from [Treasure Coast's] work under that 'work contract.'" (Maryland Casualty's Commercial Gen. Liab. Coverage Form at II.2.f.) Therefore, P & L is only insured under the Maryland Casualty policy and can only seek indemnity for property damage that resulted from Treasure Coast's work pursuant to the subcontract and that is *covered* by the policy. To determine whether P & L is entitled to indemnity, the Court must determine whether the property damage alleged in this case was covered (*i.e.,* not excluded) under the Maryland Casualty policy.

Maryland Casualty contends that the damages for which P & L is seeking indemnification are not recoverable under the "business risk" exclusions in the policy. Generally, there are two types of risks that are incurred by a contractor in a construction project. The first is commonly known as a "business risk" and encompasses those risks borne by the contractor to replace and rebuild defective work to make the project conform to the agreed specifications. Insurers usually exclude "business risks" from coverage; otherwise, the insurer would find itself in the position of guaranteeing the quality and workmanship of the contractor's work. The second risk is that the defective or faulty workmanship will cause injury to people or damage to other property. General liability coverage is available to cover this second type of risk. Maryland Casualty argues that all of the damages for which P & L seeks indemnity under Maryland Casualty's policy fall under the first type of risk and are excluded by the "business risk" provisions of the policy.

The Florida Supreme Court[3] in *LaMarche v. Shelby Mutual Insurance Co.*, 390 So.2d 325 (Fla.1980), held "that the purpose of comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product .... Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws." *Id.* at 326.

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even

> extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Home Owners Warranty Corp. v. Hanover Ins. Co.*, 683 So.2d 527, 539 (Fla.App.3d Dist.1996) (citations omitted).

Maryland Casualty cites to several "business risk" exclusions which it claims exclude P & L's loss from coverage under the policy. (Maryland Casualty's Mot. for Summ. J. at 12.) The Court will consider each exclusion in turn. First, Exclusion M provides that the policy does not cover:

> "Property damage"[4] to "impaired property"[5] or property that has not been physically injured, arising out of:

> > b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Maryland Casualty's Commercial Gen. Liab. Coverage Form at V.17.)

---

3. P & L and Maryland Casualty agree that the substantive law of Florida applies to the issue of whether P & L is entitled to indemnification under the Maryland Casualty policy. (Pl.'s Resp. To Maryland Casualty's Mot. For Summ. J. and in Supp. of its Mot. for Partial Summ. J. Against Maryland Casualty at 1.) As a federal court sitting in diversity, the Court must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Applying Georgia's choice of law rule of *lex loci contractus,* the Court concludes that Florida substantive law applies for the purposes of the Court's interpreting the Maryland Casualty policy. *Gen. Telephone Co. of Southeast v. Trimm,* 252 Ga. 95, 311 S.E.2d 460 (1984).

4. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

5. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   b. You have failed to fulfill the terms of a contract or agreement;
   if such property can be restored to use by:
   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
   b. Your fulfilling of the terms of the contract or agreement.

(Maryland Casualty's Commercial Gen. Liab. Coverage Form at V.8.)

**1354**

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of a sudden and accidental injury to "your product" or "your work" after it has been put to its intended use.

(Maryland Casualty's Commercial Gen. Liab. Coverage Form at I.2.m.)

■■■ This exclusion is commonly called the "impaired property" exclusion and is included in a policy to prevent the insured from claiming economic losses resulting from the insured's work or work product. Florida courts have outlined three rules [6] regarding the applicability of exclusions such as Exclusion M. The first rule is that if the complaint fails to allege injury to other property, and merely alleges economic loss resulting from injury to the product itself, the exclusion applies, thus precluding coverage. *Hartford Ins. Co. of the Southeast v. City of Sanibel,* 500 So.2d 581, 583 (Fla.App.2d Dist.1986). The second rule is that if the complaint alleges or otherwise establishes damage to other property, the exclusion will not apply. *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 134–36 (3d Cir.1988). The third rule is that the exclusion does not apply to situations arising from a sudden and accidental injury to the product which results in economic loss. *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.,* 748 F.2d 568, 572 (11th Cir.1984); *Commercial Union Ins. Co. v. R.H. Barto Co.,* 440 So.2d 383, 387–88 (Fla.App.4th Dist.1983).

■■■ First, it is necessary to identify the "complaint" for purposes of determining whether Exclusion M applies. Under Florida law, to determine coverage, the court may look only to the four corners of the underlying complaint alleging a claim against the insured to determine if those allegations fall within the coverage of the insurance policy. *See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.,* 358 So.2d 533 (Fla.1977); *Kings Point West, Inc. v. North River Ins. Co.,* 412 So.2d 379 (Fla. App.2d Dist.1982). If the allegations in the complaint alleging a claim against the insured are either acts not covered by the policy or exclusions from the policy's coverage, the insurer is not obligated to defend or indemnify the insured. *Landis v. Allstate Ins. Co.,* 546 So.2d 1051 (Fla. 1989); *Fed. Ins. Co. v. Applestein,* 377 So.2d 229 (Fla.App.3d Dist.1979). In this case, the demand letters from Medalist to P & L for the replacement of the windows and the subsequent demand for arbitration constitute the "complaint" against the insured. Maryland Casualty asserts that both of Medalist's demands allege merely "defective construction" losses, which are excluded under the Maryland Casualty policy; thus, Maryland Casualty is not obligated to indemnify P & L. After studying the demand letters from Medalist to P & L, however, the Court finds that the claims in the "complaint" are much broader than simply "defective construction" losses. The demand letters state that "the window structures in the clear story and the joint work around the windows and the base of the clear story structure were not constructed according to specifications." The letters also indicate that Medalist had removed one of the damaged windows and

**6.** In this Order, the Court will refer to these three rules as the "exclusion applicability rules."

"determined that the proper amount of flashing called for at the base of the window which is integral to the sealing process was not installed." Thus, the letters allege that the damage to the windows was the result of faulty installation, and as discussed in further detail below, the Court finds that those allegations would fall within the coverage of the Maryland Casualty policy.

By reviewing the "complaint" against the insured, the Court finds that the first and third exclusion applicability rules are not germane because the complaint does not allege economic loss from Treasure Coast's work or work product. Rather, the second rule applies because the complaint (*i.e.*, the demand letters from Medalist) alleges damage to other property, namely the windows that Treasure Coast installed. Thus, Exclusion M does not bar coverage if the Court determines that the damaged property was "other property" rather than Treasure Coast's "work" as defined by the insurance contract.

P & L and Maryland Casualty apparently agree that P & L would not be entitled under Maryland Casualty's policy to be reimbursed for the costs of having to correct Treasure Coast's defective work (*i.e.*, the costs of having to re-flash and re-seal the windows). Both P & L and Maryland Casualty also agree that there is only coverage under the policy where Treasure Coast's defective work damages property other than Treasure Coast's "work." However, P & L and Maryland Casualty disagree as to what constitutes Treasure Coast's "work."

P & L contends that Treasure Coast's "work" was the flashing and sealing of the windows. Treasure Coast's faulty "work" in turn caused the wooden portion of the windows to deteriorate, requiring removal and replacement of the windows. In other words, the "property damage" was to the windows because Treasure Coast's faulty flashing and sealing caused damages to other property, namely the windows manufactured by Oliveri and supplied by P & L. While Treasure Coast has no coverage under the Maryland Casualty policy for the cost of having to redo its faulty flashing and sealing because this would be considered a "business risk," there is coverage under the policy for the damages to the windows caused by the faulty flashing and sealing. P & L is not seeking from Maryland Casualty the amounts it paid Treasure Coast to flash and seal the windows; rather, it is seeking the amounts it paid to Medalist for the damages to the windows and the cost to replace them.

■ In the Maryland policy, Treasure Coast's "work" is defined as follows:

a. "Your work" means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. "Your work" includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

(Maryland Casualty's Commercial Gen. Liab. Coverage Form at V.22.) Clearly only paragraph a. is relevant for purposes of this discussion. The items falling within the scope of subparagraph (1) are the physical labor to mount the windows, install the flashing, and seal the windows. The items falling within the scope of subparagraph (2) only include the materials, parts, or equipment furnished by Treasure Coast to install the windows, such as caulk, screws, and other necessary items. This does not include the windows themselves

because the windows were manufactured by Oliveri and furnished by the general contractor, P & L. Thus, because Treasure Coast's "work" did not include the windows, the windows are considered "other property," and the Maryland Casualty covers the damage to the windows. This is a classic example in which a policy provides coverage for physical damages to other property and *not* for contractual liability of the insured for economic losses.

■ Furthermore, Maryland Casualty also argues that even if the windows are considered "other property," Exclusions J(4)-(6) would bar coverage. Exclusion J provides that the policy does not cover:

"Property damage" to:

.    .    .    .    .

> (4) Personal property in the care, custody or control of the insured;
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Maryland Casualty's Commercial Gen. Liab. Coverage Form at I.2.j.) The Court finds, however, that none of these exclusions apply in this case. Exclusion J(4) applies only when the damage occurs while the property is in the "care, custody or control" of Treasure Coast. Here, the damage to the windows did not occur during their installation by Treasure Coast; the damage occurred only after the construction was completed and Medalist was in possession of the clubhouse. Similarly, Exclusion J(5) excludes coverage for property damage which occurs when the insured or others working on its behalf "are

performing operations." The damages in question did not occur while Treasure Coast was performing operations (*i.e.*, installing the windows); rather, the damage occurred after Treasure Coast's work was completed. Finally, Exclusion J(6) excludes the costs to replace or repair Treasure Coast's faulty workmanship. As discussed above, P & L is not seeking to recover the amounts it paid Treasure Coast to install the windows; rather, it seeks to recover the cost of replacing the rotted windows that were damaged as a result of Treasure Coast's faulty workmanship.

Accordingly, the Court finds that none of the "business risk" exclusions in the Maryland Casualty policy bar coverage in this case. P & L, as an insured, is entitled to full recovery under the Maryland Casualty policy. Therefore, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment Against Maryland Casualty Company [29–1] and **DENIES** Defendant Maryland Casualty's Cross–Motion for Summary Judgment Against Royal and Motion for Summary Judgment Against Pinkerton & Laws [22–1] as to the breach of contract claim (Count II).

**2. Counts IV and VI: Litigation Expenses**

As a preliminary matter, because P & L has abandoned its claim for expenses under Georgia Code section 13–6–11 (Count IV of the Original Complaint), and because Code section 33–4–6 is the exclusive remedy for an insurer's bad faith refusal to pay a claim, Defendant Maryland Casualty is entitled to summary judgment on Count IV. With respect to P & L's claim for bad faith damages pursuant to Georgia Code section 33–4–6 (Count VI of the Amended Complaint), the Court finds that Maryland Casualty is entitled to summary judgment because Georgia law does not apply to the

Maryland Casualty policy or the contractual relationship between Maryland Casualty and P & L.

■ Federal jurisdiction in this case is based on diversity of citizenship, and the forum state is Georgia. As a federal court exercising diversity jurisdiction, the Court engages in a two-step inquiry to determine if Georgia Code section 33–4–6 is applicable. In the first step, the Court determines whether the matter at hand is procedural or substantive for *Erie Railroad Co. v. Tompkins* purposes. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the matter is procedural, then federal law will apply, but if the matter is substantive, then the Court will apply the law of the forum state. *See Erie,* 304 U.S. at 78, 58 S.Ct. 817 (a federal court sitting in diversity applies state substantive law). If the Court determines that the matter is substantive, it will examine the substantive law of the forum state, which includes its choice of law rules, to ascertain the applicable substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The Court notes, however, that the two steps are independent of each other, and thus a finding that a matter is substantive or procedural for *Erie* purposes does not compel the same characterization for choice of law purposes. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 726, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988).

■ It is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes. *See McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir.2001); *All Underwriters v. Weisberg,* 222 F.3d 1309, 1311–12 (11th Cir.2000) (holding Florida statute which allowed an insured or named beneficiary under an insurance policy to recover attorney's fees upon judgment in insured's favor was substan-

tive for *Erie* purposes). As the Supreme Court has stated:

[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (citation and quotation omitted). Hence, the Court turns to Georgia's choice of law rules to determine whether P & L is entitled to recover under Georgia Code section 33–4–6.

■ Georgia Code section 33–4–6, a bad faith penalty provision that imposes attorney's fees, is substantive for purposes of *Erie,* and thus not applicable if the laws of some other state should be applied to the issues in this case. *See Turpentine & Rosin Factors v. Travelers Ins. Co.,* 45 F.Supp. 310, 317–18 (S.D.Ga.1942) (discussing Georgia Code (1933), Sec. 56–706, the predecessor to the current Code section 33–4–6) (citing *Coffin v. London & Edinburgh Ins. Co.,* 27 F.2d 616 (N.D.Ga. 1928); *Fidelity–Phenix Fire Ins. Co. v. Cortez Cigar Co.,* 92 F.2d 882 (5th Cir. 1937)). Here, as the parties have conceded, and as Georgia's choice of law rules dictate, Florida substantive law applies to Maryland Casualty's insurance contracts. *See supra* note 3. Therefore, Georgia Code section 33–4–6 is inapplicable, and Defendant Maryland Casualty is entitled to summary judgment on this claim.

Even if Georgia law were to apply in this case, the Court finds that as a matter of law, Maryland Casualty had reasonable grounds to contest P & L's claim; thus, Maryland Casualty cannot be held liable under section 33–4–6, either for the imposition of bad faith penalties or for attor-

ney's fees. *See Rice v. State Farm Fire & Cas. Co.,* 208 Ga.App. 166, 169, 430 S.E.2d 75 (1993) ("To support a cause of action under O.C.G.A. § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith .... Penalties for bad faith [and attorney's fees] are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.") (quoting *Mass. Bay Ins. Co. v. Hall,* 196 Ga.App. 349, 355, 395 S.E.2d 851 (1990)). Maryland Casualty's arguments on summary judgment demonstrate that it did not refuse payment on the policy for "frivolous" or "unfounded" reasons. *S. Fire & Cas. Ins. Co. v. Northwest Ga. Bank,* 209 Ga.App. 867, 868, 434 S.E.2d 729 (1993). The questions of law and fact involved in this case are difficult, and Maryland Casualty has the right to contest payment of the claim and is not guilty of bad faith in refusing to pay it. *See U.S. Fid. & Guar. Co. v. Woodward,* 118 Ga.App. 591, 594, 164 S.E.2d 878 (1968).

Accordingly, the Court **GRANTS** Defendant Maryland Casualty's Cross–Motion for Summary Judgment Against Royal and Motion for Summary Judgment Against Pinkerton & Laws [22–1] and **DENIES** Plaintiff's Motion for Partial Summary Judgment Against Maryland Casualty Company [29–1] on the claims for litigation expenses (Counts IV and VI).

### B. Royal's Motion for Summary Judgment

Royal moves for summary judgment on Count I (Breach of Contract) and Counts III and V (Expenses of Litigation) of the Complaint. The Court will address each of these counts separately. As a preliminary matter, the Court **GRANTS** Plaintiff's Motion for Leave To File Supplemental Memorandum of Law [32–1].

#### 1. Count I: Breach of Contract

First, Royal argues that it is entitled to summary judgment because P & L forfeited any coverage that may exist under the Royal policy by its late notice to Royal. (Def. Royal's Br. in Supp. of its Mot. for Summ. J. at 11–14.) Second, Royal asserts that the policy does not provide coverage for the cost of replacing the rotted windows because the alleged loss is the result of business risks that arose from P & L's business operations rather than insurable risks. (*Id.* at 14–17.) Third, Royal contends that any insurance coverage provided by Royal's policy is excess to Maryland Casualty's insurance. (*Id.* at 17.) Finally, in a second motion for summary judgment, Royal argues that its insurance contract does not provide coverage because claims of loss arising from the costs to repair or replace the faulty workmanship is not property damage caused by an occurrence. (Def. Royal's Br. in Supp. of its Second Mot. for Summ. J. at 5–8.)

The Court will focus on one determinative issue in Royal's motion for summary judgment. Royal's policy includes an endorsement, "Excess Provision–Subcontractors," which provides that "[t]he coverage afforded the insured under this coverage part will be excess over any valid and collectible insurance available to the insured as an additional insured under a policy issued to a subcontractor doing work for the insured." (Endorsement H (Royal's Mot. for Summ. J., Ex. A).) The Court finds that there are insurable non-business risks at issue in this case, and Maryland Casualty's $600,000 policy limit provides primary coverage for P & L's loss. As a result, even assuming that coverage would be available under the Royal policy, Royal's coverage is excess, and Royal is entitled to summary judgment. Accordingly, the Court **GRANTS** Royal

Insurance Company's Motion for Summary Judgment [11–1] on P & L's breach of contract claim (Count I). Because the additional argument raised in Royal's second motion for summary judgment is unnecessary for determination of Royal's liability, the Court DENIES AS MOOT Royal Insurance Company's Second Motion for Summary Judgment [39–1].

### 2. Counts III and V: Litigation Expenses

As a preliminary matter, because P & L has abandoned its claim for expenses under Georgia Code section 13–6–11 (Count III of the Original Complaint), and because Code section 33–4–6 is the exclusive remedy for an insurer's bad faith refusal to pay a claim, Defendant Royal is entitled to summary judgment on Count III.

■■■■ P & L also alleges that Royal is liable for bad faith penalties under Georgia Code section 33–4–6 (Count V of the Amended Complaint). Under Georgia law, an insurer may be liable to pay the holder of the policy a bad faith penalty and all reasonable attorney's fees if the insurer refuses to pay a loss which is covered by an insurance policy within sixty (60) days after a demand has been made by the insured and if a finding has been made that such refusal was in bad faith. O.C.G.A. § 33–4–6. In this case, as the Court has found the Defendant is not liable to the insured since Royal's policy provides only excess coverage, the claim for bad faith penalties must likewise fail. Moreover, statutory penalties for bad faith refusal to pay are not authorized "where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." *Rice v. State Farm Fire & Cas. Co.*, 208 Ga. App. 166, 430 S.E.2d 75, 78 (1993). Here, Royal asserted several viable defenses to P & L's recovery under the insurance policy, and the defenses were successful. Accordingly, the Court GRANTS Defendant Royal Insurance Company's Motion for Summary Judgment [11–1] on the claims for litigation expenses (Counts III and V).

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment Against Maryland Casualty Company [29–1] and Defendant Maryland Casualty's Cross–Motion for Summary Judgment Against Royal and Motion for Summary Judgment Against Pinkerton & Laws [22–1] are hereby **GRANTED in part and DENIED in part.** Defendant Royal Insurance Company's Motion for Summary Judgment [11–1] and Plaintiff's Motion for Leave To File Supplemental Memorandum of Law [32–1] are hereby **GRANTED**. Royal Insurance Company's Second Motion for Summary Judgment [39–1] is hereby **DENIED AS MOOT**. The Clerk is hereby **DIRECTED** to enter judgment against Maryland Casualty Company and in favor of P & L in the amount of $112,329.62.