AMERICAN STATES INSURANCE
CO., Plaintiff,

v.

Garold POWERS; Sam Stout; Debbie
Stout; and Stouts Fiberglass,
Inc., Defendants.

No. 02–2403–JWL.

United States District Court,
D. Kansas.

May 15, 2003.

Gregory A. Lee, Davis, Unrein, McCallister, Biggs & Head, LLP, Topeka, KS, for American States Ins. Co.

Stephen L. Benner, Mark D. Murphy, Murphy Law Firm, Overland park, KS, for Stouts Fiberglass, Inc., Debbie Stout, Sam Stout.

Richard W. Miller, Danne W. Webb, Miller Law Firm, P.C., Kansas City, MO, for Garold Powers.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

In February 2000, defendants Sam Stout and Debbie Stout, d/b/a Stout Fiberglass, Inc., contracted with defendant Garold Powers to construct a building. Mr. Powers is insured by a commercial general liability policy issued by plaintiff American States Insurance Company (hereinafter "American States"). After construction of the building was complete, the Stouts filed a lawsuit against Mr. Powers in the District Court of Neosho County, Kansas alleging that they sustained damages as a result of Mr. Powers' breach of contract, negligence and fraudulent and negligent misrepresentations. American States is presently defending Mr. Powers in the Neosho County suit under a reservation of rights and has filed this declaratory judgment action seeking a declaration that there is no coverage under the policy issued to Mr. Powers and that it owes no duty to defend or indemnify Mr. Powers with respect to the underlying suit. This matter is presently before the court on American States' motion for summary judgment (doc. # 19). As set forth below, the motion is granted.

## I. Facts

The following facts are uncontroverted or related in the light most favorable to Mr. Powers, the nonmoving party. Plaintiff American States is an insurance company that issued a commercial general liability policy (hereinafter "CGL policy") to defendant Garold Powers. In February 2000, defendants Sam Stout and Debbie Stout, d/b/a Stout Fiberglass, Inc., contracted with Mr. Powers to construct a building measuring 40′ × 80′ with 14′ walls and other specifications discussed by the Stouts and Mr. Powers. According to the allegations in the underlying suit, Mr. Powers represented to the Stouts that he had experience and expertise in constructing buildings and that he could complete the building in two to three weeks. The Stouts agreed to pay Mr. Powers $4800.00 to construct the building (with the Stouts to furnish the materials at their cost) and $500.00 to construct the trusses for the building. Thereafter, the Stouts purchased various materials requested by Mr. Powers for the project and Mr. Powers commenced construction on or about March 11, 2000. The building was complete on May 30, 2000.[1]

---

**1.** The uncontroverted facts as set forth by American States establish that Mr. Powers "last day on the job was May 30, 2000." This fact, coupled with the fact that Mr. Powers filed a mechanic's lien for sums allegedly owed to him, leads this court to assume that the building was completed by Mr. Powers (as

On August 4, 2000, Mr. Powers filed a mechanic's lien on the Stouts' building with the Neosho County District Court, alleging nonpayment of sums owed to him. One year later, in August 2001, the Stouts filed a petition against Mr. Powers in the Neosho County District Court alleging that Mr. Powers breached his contract with the Stouts and was negligent in failing to construct the building in a workmanlike and safe manner, in failing to construct the building according to the agreed specifications; in failing to construct the building in the timeframe agreed to; in failing to meet building codes for structural design; and failing to stay within the contract price. In addition to their claims for breach of contract and negligence, the Stouts asserted that Mr. Powers made false and/or negligent misrepresentations to the Stouts that they relied upon to their detriment. In their petition, the Stouts sought damages in excess of $75,000.00 including the cost of replacing the building; lost time and expense for the initial construction of the building; and disruption of their business (for which the building was intended to be used).

American States has denied coverage under the policy it issued to Mr. Powers but has agreed to defend Mr. Powers in the underlying litigation under a reservation of rights. American States has filed this declaratory judgment action seeking a ruling that there is no coverage under the policy for any and all of the claims asserted by the Stouts against Mr. Powers and that American States has no duty to defend Mr. Powers in the underlying suit.[2]

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences

---

opposed to being left unfinished or being completed by someone else). While Mr. Powers purports to controvert the fact that his last day on the job was May 30, he does so only by generally denying the fact and referring the court to paragraph 3 of his answer to the underlying lawsuit. That paragraph, however, is simply another general denial of the allegation. Mr. Powers, therefore, has failed to controvert the fact that his last day on the job was May 30, 2000 and he has not suggested in any way that the building was not completed by him as of May 30, 2000. As will be seen from the text of this opinion, the court's assumption that the building was completed by Mr. Powers is critical to its determination that exclusion l precludes coverage in this case. However, to the extent the court has misconstrued the facts (*e.g.*, if the building was left unfinished by Mr. Powers), then summary judgment would nonetheless be appropriate under exclusion j(6), which addresses work that was incomplete at the time of the damage. *See* discussion *infra* Part III.B.2.

**2.** The parties do not seem to dispute that the policy issued by American States would not

cover the Stouts' breach of contract claim against Mr. Powers. Indeed, the Tenth Circuit, after analyzing a CGL policy with identical language, concluded that an insured was not entitled to coverage because the underlying lawsuit was for breach of contract and, thus, not covered by the CGL policy. *See VBF, Inc. v. Chubb Group of Insurance Companies*, 263 F.3d 1226, 1231 (10th Cir.2001) (analyzing relevant phrase, "We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract;" phrases "legally obligated to pay" and "liability imposed by law" refer only to tort claims and not contract claims and pertinent contract was not an "insured contract" under the policy); *see also* Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 794 (Spring 1995) (the "insured contract" provision insures over an indemnity provision in a construction contract but does not insure breach of contract claims).

therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke,*

*Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

American States moves for summary judgment on its declaratory judgment action, seeking a declaration that there is no coverage under the policy issued to Mr. Powers for any and all claims alleged by the Stouts against Mr. Powers and that American States has no duty to defend or indemnify Mr. Powers with regard to any claims asserted by the Stouts in the underlying litigation. In support of its motion, American States asserts first that Mr. Powers' faulty or negligent workmanship does not constitute an "occurrence" within the meaning of the policy, thereby precluding coverage in this case. Second, American States asserts that even if Mr. Powers' work constitutes an occurrence, coverage is nonetheless precluded by virtue of one or more policy exclusions. The court addresses each of these arguments below.

## A. Occurrence

█ The policy issued by American States to Mr. Powers expressly states that

the "insurance applies to 'bodily injury' and 'property damage' only if ... [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" *See* Section I, Coverage A, ¶ 1(b)(1). An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Section V, ¶ 12. In its motion for summary judgment, American States urges that coverage does not exist under the policy it issued to Mr. Powers because Mr. Powers' faulty workmanship (the thrust of the claims made by the Stouts) is not an "occurrence." American States also contends that if faulty workmanship does constitute an "occurrence," then the CGL policy is essentially transformed into a performance bond.

As Mr. Powers highlights in his response, however, this court has previously rejected the arguments made by American States. In *Fidelity & Deposit Company of Maryland v. Hartford Casualty Insurance Co.*, 189 F.Supp.2d 1212 (D.Kan. 2002), this court, examining a CGL policy with language that mirrors the policy language here, concluded that the Kansas Supreme Court would find that the damage that occurs as a result of faulty or negligent workmanship constitutes an "occurrence" as long as the insured did not intend for the damage to occur. *Id.* at 1216–18. The court also expressly rejected the argument that such a conclusion transforms a CGL policy into a performance bond. *Id.* at 1218. American States does not suggest that the facts presented here are in any way distinguishable from the facts present in *Fidelity* nor does American States suggest that the *Fidelity* decision would not apply to this case for any other reason. In fact, in its reply brief, American States seems to abandon

entirely its arguments concerning whether faulty workmanship is an "occurrence." American States does not mention this court's *Fidelity* decision and makes no reference to its "occurrence" argument; rather, the reply brief is focused entirely on the policy exclusions described below. Thus, it seems that American States concedes that this court's *Fidelity* decision forecloses further discussion on the "occurrence" argument.

In short, then, the court reiterates its conclusion in *Fidelity* that faulty or negligent workmanship can constitute an "occurrence" so long as the insured did not intend for the damage to occur. Because there is no evidence or suggestion here that Mr. Powers intended any damage to occur, his workmanship constitutes an occurrence within the meaning of the policy.[3]

**B. Policy Exclusions**

Even if an occurrence is established under an insurance policy, an insurer may still be excused from its duty to defend if, as a matter of law, policy exclusions apply to preclude coverage. *See Fidelity & Deposit Co. of Maryland v. Hartford Cas. Ins. Co.*, 189 F.Supp.2d 1212, 1224 (D.Kan. 2002). The insurer has the burden of establishing that the policy exclusions apply to the circumstances of the particular case. *Id.* (citing *Marquis v. State Farm Fire and Casualty Co.*, 265 Kan. 317, 961 P.2d 1213 (1998) (citing *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974))). Policy exclusions generally require a "narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms." *Id.* (citations omitted). When an insurer intends to restrict coverage, "it

---

**3.** At the very least, the term "occurrence" is ambiguous such that the court would construe the term in a manner favorable to Mr. Powers, the insured. *See id.* at 1219.

must use clear and unambiguous language in doing so, otherwise the insurance policy will be construed in favor of the insured." *Id.* (citations omitted).

In its motion for summary judgment, American States asserts that even if faulty workmanship constitutes an "occurrence" such that the policy would apply to any property damage caused by that occurrence, it nonetheless does not have a duty to indemnify or defend Mr. Powers because various policy exclusions would apply to bar coverage. Specifically, American States contends that policy exclusions j(5), j(6), k and l all preclude coverage for the property damage alleged in the underlying suit filed by the Stouts.[4] The court addresses each of these in turn.

*1. Exclusion j(5)*

In its motion for summary judgment, American States asserts that exclusion j(5) precludes coverage. Exclusion j(5) of the policy issued to Mr. Powers precludes coverage for property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." As set forth below, the court concludes, even assuming that the building constructed by Mr. Powers constitutes real property, *see* discussion *infra* Part III.B.3, that exclusion j(5) nonetheless does not apply to the facts of this case.

The vast majority of commentators that have addressed exclusion j(5) have recognized that the exclusion is intended to "bar coverage for the work being done by a contractor when claims arise at the time

the work is being performed." *See* Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies,* 30 Tort & Ins. L.J. 785, 796 (Spring 1995); *see also* Emy Poulad Grotell, *Understanding the Basics of Commercial General Liability Policies,* 652 PLI/Lit 63, 76 (Practising Law Institute, Litigation and Administrative Practice Course Handbook Series, 2001) (commentators indicate that exclusion j(5) only applies to the extent that the damage occurred while the insured was performing); F. Malcolm Cunningham, Jr. & Amy L. Fischer, *Insurance Coverage in Construction–The Unanswered Question,* 33 Tort & Ins. L.J. 1063, 1093 (Summer 1998) (exclusion j(5) applies only to damage from ongoing work). In other words, exclusion j(5) applies to damages involving "works in progress" and does not apply to completed operations. *See* Patrick J. O'Connor, Jr., *Insurance Law & Construction,* 19–APR Construction Law. 5, 8 (April 1999) (use of the present tense in language of exclusion j(5), i.e., "are performing operations," has been interpreted to mean that the exclusion applies only to works in progress and not to completed operations); Grotell, *supra,* at 76 (to the extent damage occurred after the operations have ceased, the exclusion would not apply); Franco, *supra,* at 797 (exclusion j(5) is written in the present tense and thus bars coverage only for the particular part of real property "on which the insured is working at the time of the loss").

The uncontroverted facts demonstrate that Mr. Powers' work was not "in progress" at the time the Stouts' claim arose. Rather, Mr. Powers last day on the job

---

4. In its reply brief, American States asserts for the first time that exclusion m also precludes coverage. The court, of course, will not consider arguments raised for the first time in a reply brief. *See Minshall v. McGraw Hill Broadcasting Co.,* 323 F.3d 1273, 1288 (10th Cir.2003) (argument raised for the first time in reply brief is waived) (citing *Coleman v. B–G Maintenance Management,* 108 F.3d 1199, 1205 (10th Cir.1997) (issues not raised in the opening brief are deemed abandoned or waived)).

was May 30, 2000 and, more than one year later, the Stouts filed a claim asserting that the building, as constructed by Mr. Powers, did not meet current building codes for structural design and safety; was not constructed according to agreed specifications; and was not constructed in a workmanlike manner. Thus, because the damage did not occur while Mr. Powers was working on the project, exclusion j(5) has no application here. *See, e.g., Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am.*, 227 F.Supp.2d 1348 (N.D.Ga.2002) (exclusion j(5) did not preclude coverage for property damage because the damages at issue did not occur while the insured was performing operations, *i.e.*, installing windows, damages occurred after insured's work was completed, *i.e.*, windows were already installed); *American Mercury Ins. Group v. Urban*, No. 00–2122–DJW, 2001 WL 1723734, at *8–9 (D.Kan. May 23, 2001) (exclusion j(5) did not apply because the insured was not "in the process of performing operations").

## 2. Exclusion j(6)

■ American States also contends that exclusion j(6) bars coverage. This exclusion precludes coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Moreover, the policy issued by American States expressly provides that exclusion j(6) "does not apply to 'property damage' included in the 'products-completed operations hazard.'" "Products-completed operations hazard," as defined by the policy in relevant part, includes property damage arising out of the insured's work except "work that has not yet been completed or abandoned." *See* Section V, ¶ 14. The insured's work is deemed completed even though the work may need service, maintenance, correction, repair or replacement but is otherwise complete. *See id.* The

insured's work is also deemed completed when the insured has completed all of the work called for in the pertinent contract. *See id.*

Thus, when exclusion j(6) is read together with the "product-completed operations hazard" provision, the result is that exclusion j(6) does not apply to claims arising from "defective work that is discovered after the contractor has completed its work." *See* O'Connor, *supra*, at 8; *see also* Cunningham & Fischer, *supra*, at 1094 ("exclusion j(6) only pertains to repair or replacement of defective work while construction is ongoing"); Grotell, *supra*, at 77 (because exclusion j(6) expressly does not apply to property damage which falls within the products completed operations hazard, the exclusion applies only to work that was incomplete at the time of the damage). The application of exclusion j(6), then, turns on whether Mr. Powers' work on the building was incomplete (in which case the exclusion would apply) or complete (in which case the exclusion would not apply).

There is no evidence before the court suggesting that Mr. Powers' work on the building was incomplete at the time the Stouts discovered the allegedly defective work. Rather, the uncontroverted facts demonstrate that Mr. Powers completed the building on May 30, 2000 and that sometime thereafter the Stouts realized that the building allegedly did not meet the contract specifications, did not meet various building codes pertaining to structural design, and was not constructed in a workmanlike manner. While the work performed by Mr. Powers may have needed significant correction, repair or replacement, such work is nonetheless treated as "complete" for purposes of the policy. Thus, because Mr. Powers' work was complete at the time of the damage, the property damage falls within the "property-

completed operations hazard" exception to exclusion j(6) and, accordingly, exclusion j(6) does not apply here. *See Hi–Port, Inc. v. American Int'l Specialty Lines Ins. Co.,* 22 F.Supp.2d 596, 599 (S.D.Tex.1997) (exclusion j(6) applies to work that was incomplete at the time of the damage).

### 3. Exclusion k

■ American States next asserts that exclusion k precludes coverage. Exclusion k states that the policy does not apply to " 'property damage' to 'your product' arising out of it or any part of it." According to American States, the building constructed by Mr. Powers constitutes a product. However, the policy definition of "your product" expressly excludes real property. *See* Section V, ¶ 18(a) (defining "your product" as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of" by you). Thus, the question of whether the building constructed by Mr. Powers constitutes his "product" turns on whether the building constitutes "real property."

Several courts and commentators have suggested that a building would be considered "real property" for purposes of exclusion k, thus rendering the exclusion inapplicable. *See Prisco Serena Sturm Architects, Ltd. v. Liberty Mutual Ins. Co.,* 126 F.3d 886, 892 (7th Cir.1997) ("your product" exclusion did not preclude coverage to architectural firm for negligence of general contractor's building; even assuming firm's "product" was the building, exclusion (k) presumably would be inapplicable by its terms); *see also* Emy Poulad Grotell, *Understanding the Basics of Commercial General Liability Policies,* 652 PLI/Lit 63, 77 (Practising Law Institute, Litigation and Administrative Practice Course Handbook Series,

2001) (where the CGL policy definition of "your product" expressly excludes real property, the "your product" exclusion will not apply to the named insured who is erecting a building); F. Malcolm Cunningham, Jr. & Amy L. Fischer, *Insurance Coverage in Construction–The Unanswered Question,* 33 Tort & Ins. L.J. 1063, 1094–95 (Summer 1998) ("Real property" was deleted from the definition of "product" in the 1986 form CGL policy, "clarifying that work on homes, buildings, or other structures is not considered to be the insured's 'product.' ").

Under Kansas law, the "general rule is that a building is normally considered to be part of a real estate and that the burden of showing that it is otherwise is upon the party who claims that the building is personal property." *Stalcup v. Detrich,* 27 Kan.App.2d 880, 886–87, 10 P.3d 3 (2000). The factors to be considered in determining whether a building is personal property or a fixture on the real estate are: (1) annexation to the realty; (2) adaptation to the use of that part of the realty with which it is attached; and (3) the intention of the party making the annexation. *Id.* at 886, 10 P.3d 3 (citing *U.S.D. No. 464 v. Porter,* 234 Kan. 690, 695, 676 P.2d 84 (1984)). The burden, then, would be on American States to show that the building constructed by Mr. Powers constitutes personal property.[5] American States has offered absolutely no evidence that might bear on this issue. Thus, the court cannot conclude that the building is personal property such that exclusion k might preclude coverage and American is not entitled to summary judgment based on exclusion k.

---

**5.** Of course, by also asserting that exclusion j(5) precludes coverage, American States apparently believes that the building constructed

by Mr. Powers constitutes real property, as exclusion j(5) only applies to "that particular part of real property . . . ."

*4. Exclusion l*

 Finally, American States contends that exclusion l precludes coverage in this case. That exclusion bars coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." [6] On its face, then, exclusion l is intended to apply only to work within the products-completed operations hazard and, thus, exclusion l has no bearing on operations in progress or uncompleted operations. *See* Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 799 (Spring 1995). In other words, exclusion l bars claims for damage occurring after construction is complete. *See* Cunningham & Fischer, *supra*, at 1092; accord 4 *Bruner & O'Connor Construction Law* § 11.46 (May 2002) (Exclusion l "performs the lion's share of the labor in reducing coverage for losses arising from a contractor's poor workmanship in a completed operations context.").

As set forth above in connection with the court's discussion of exclusion j(6), Mr. Powers' work on the building falls within the "products-completed operations hazard" because the building was complete at the time of the damage. Moreover, as the policy defines "your work" as "work or operations performed by you" and "materials, parts or equipment furnished in con-nection with such work or operations," Mr. Powers' work on the building clearly falls within exclusion l. Thus, the Stouts' negligence claims against Mr. Powers are not covered by the policy. In addition, the Stouts' claim for fraudulent and/or negligent misrepresentations is not covered by the policy because "your work" is defined in the policy to include "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" *See Shelter Mutual Ins. Co. v. Gardner*, 872 F.Supp. 622, 630 (W.D.Ark.1995) (products completed operations hazard exclusion in policy barred coverage for negligent misrepresentations as the provision expressly encompasses such representations).[7]

Because exclusion l applies to the claims asserted by the Stouts and there is no possibility of coverage, the court finds that American States has no duty to defend Mr. Powers against those claims and no duty to indemnify Mr. Powers. American States' motion for summary judgment is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for summary judgment (doc. # 19) is granted. The court declares there is no coverage under the policy issued by plaintiff American States Insurance Company to defendant Garold Powers for any of the claims alleged by the defendants Sam and Debbie

---

**6.** The exclusion, however, expressly does not apply if the damaged work or the work out of which the damage arises was performed by a subcontractor. As there is no allegation that any subcontractors performed work on the Stouts' building on behalf of Mr. Powers, this provision is not relevant to the court's analysis of the applicability of exclusion l.

**7.** The Stouts' claim for fraudulent misrepresentations would also be excluded from coverage pursuant to exclusion "a" of the policy, which bars coverage for "expected or intended" acts. *See, e.g., Cincinnati Ins. Co. v. Mer-* *amec Valley Bank*, 259 F.Supp.2d 922, 927, 2003 WL 1992527, at *5 (E.D.Mo. Feb.10, 2003) (fraudulent misrepresentation claim is an intentional tort that falls within a policy's "expected or intended" exclusion); *Potomac Ins. Co. of Illinois v. Peppers*, 890 F.Supp. 634, 643–44 (S.D.Tex.1995) (same). In addition, the court seriously questions whether fraudulent misrepresentations constitute an "occurrence" for purposes of the policy. *See Cincinnati Ins. Co.*, 259 F.Supp.2d at 927, 2003 WL 1992527, at *5; *Bendis v. Hartford Acc. & Indemn. Co.*, 1993 WL 463617, at *2 (D.Kan. Sept.16, 1993).

Stout and Stouts Fiberglass, Inc. against Mr. Powers. The court further declares that plaintiff American States Insurance Company has no duty to defend or indemnify Mr. Powers with regard to any claims asserted by the Stouts and Stouts Fiberglass, Inc. in the underlying litigation.

**IT IS SO ORDERED.**