No. 76,573

TIMOTHY D. HAMILTON, *Appellant/Cross-Appellee*, v. STATE FARM FIRE AND CASUALTY COMPANY, *Appellee/Cross-Appellant.*

(953 P.2d 1027)

Opinion filed January 30, 1998.

*Donald T. Taylor*, of Robb, Taylor & O'Connor, of Kansas City, argued the cause and was on the briefs for appellant/cross-appellee.

*Gerald A. King*, of Armstrong, Teasdale, Schlafly & Davis, of Kansas City, Missouri, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

DAVIS, J.: Timothy D. Hamilton submitted a claim under his homeowner's policy for the collapse of a basement wall. State Farm

Fire and Casualty Company (State Farm) denied coverage. The jury awarded Hamilton $4,750, the cost of repairs. The trial court granted Hamilton prejudgment interest but denied attorney fees, concluding that fees may be awarded under K.S.A. 40-908 only when the loss is caused by fire, tornado, lightning, or hail. We reverse and remand for a determination of reasonable fees. We also affirm the award of prejudgment interest.

Hamilton purchased from State Farm a homeowner's policy covering his house. The policy covered direct physical loss from fire, tornado, lightning, or hail, as well as other losses. It specifically covered direct physical loss involving collapse of an insured building or any part of the building caused by hidden decay. The policy contained an exception for losses caused by earth movements or water damage.

Hamilton filed a claim with State Farm for damages suffered when part of a basement wall collapsed. Based upon the exception for losses caused by earth movements or water damage, State Farm denied coverage. Hamilton filed suit against State Farm for $4,750, the amount he spent to repair the wall.

Laura Williard, Hamilton's estranged wife, testified that on April 19, 1994, she was residing at the Hamilton's address. Williard stated that she heard a noise from the basement and smelled natural gas. Upon entering the basement, she found that part of the basement wall had fallen and knocked over the water heater. She called State Farm and was informed that it did not pay for foundation problems. She then referred the matter to Hamilton. Willard stated that there had been no problems with the wall prior to its collapse.

Hamilton testified that he was not living at the house at the time of the wall's collapse because he and his wife were separated. Upon receiving notice of the collapsed wall, he called Jannel Munk, a claims specialist at State Farm. According to Hamilton, Munk told him that State Farm did not cover basements or foundations. However, Munk agreed to inspect the damage. Hamilton testified that he contacted two companies, Grant Renne & Sons, Inc., and May Development, to come out and give bids to repair the damage. He stated that he also contacted Brad Hagan, another contractor, on

the advice of Munk, who told him that Hagan did a lot of work with State Farm.

Hamilton testified that Munk, C. Douglas Carey from State Farm, and Brad Hagan arrived at his house on the afternoon of April 20, 1994. Hagan, Munk, and Carey went into the basement to look at the wall. According to Hamilton, the group spent only a few minutes in the basement. Carey informed him that the loss was not covered and he would be receiving a letter to that effect. Hamilton hired Grant Renne & Sons to repair the damage at a cost of $4,750.

Hamilton testified that State Farm sent him a letter denying coverage on the basis that the collapse of the wall was caused by heavy rains and water pressure. Hamilton introduced meteorological records for April 1 to April 19, 1997, which showed that the total rainfall in that time period had been 2.13 inches.

Charles Anderson, a contractor for Grant Renne & Sons, who repaired the wall, testified that the earth behind the wall was dry and packed and required the use of a pick and mattock to dig it out to make repairs. Dean Hannen, another contractor for Grant Renne & Sons, also testified. Based upon his 19 years in the foundation repair business, he was of the opinion that the wall collapsed due to hidden decay. He also testified that the dirt behind the wall was hard and the pattern of damage did not look as though it had been caused by settling or expansion of the foundation.

State Farm presented the testimony of Jannel Munk, the claims specialist who had worked on Hamilton's claim. Munk testified that she first talked to Williard and implied that the claim might not be covered but that she would take a look at the damage. According to Munk, Williard asked her to contact Hamilton. Munk stated that she went with her supervisor, C. Douglas Carey, to inspect the damage. They found Brad Hagan already at the site, although Munk denied that she had ever advised Hamilton to contact him.

Munk stated that she, Carey, and Hagan went into the basement and took pictures of the damage. They then went outside to look at the north side of the house where the collapse had occurred. She testified that there was a concrete trough on the north side of the house and there was a sunken area in the trough which looked

as if it might trap water. She stated she and Carey advised Hamilton and Williard that there was no coverage and later sent a letter to that effect. Carey also testified that there was a low spot in the trough outside the wall. In Carey's opinion, the collapse was caused by heavy soil due to moisture. Hagan was also of the opinion that the collapse was caused by moisture as well as the fact that the wall was not properly installed.

On cross-examination, Carey admitted that when he initially assigned the case to Munk, he wrote a note to her stating that he could not think of any way that Hamilton's claim would be covered under the insurance policy because the collapse was probably caused by settling, underground water, or earth movement. He also admitted that he did not perform any tests on the wall.

The jury was charged with determining the cause of the collapse. The only real issue involved coverage under the policy. The only evidence on damages was the cost of repair, $4,750. The jury found that the cause of the collapse was hidden decay and found for Hamilton, awarding damages in the amount of $4,750.

Hamilton filed a motion for his reasonable attorney fees and costs based on K.S.A. 40-908 and K.S.A. 40-256. The district court denied Hamilton's motion. Hamilton also filed a motion to determine interest and costs. The district court granted the motion and awarded Hamilton prejudgment interest in the amount of $688.52.

Hamilton appeals the district court's denial of his motion for attorney fees. State Farm cross-appeals the district court's granting of prejudgment interest.

## Attorney Fees Under K.S.A. 40-908

Hamilton argues that the district court erred in failing to award him attorney fees under K.S.A. 40-908. He contends that under the plain language of K.S.A. 40-908, he is entitled to recover.

K.S.A. 40-908 provides:

"That in all actions now pending or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered

and collected as a part of the costs: *Provided, however,* that when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no costs shall be allowed."

Hamilton argues that since judgment was rendered against State Farm on his homeowner's policy, which is a policy given to insure his property against loss by fire, tornado, lightning, or hail, among other things, he is entitled to attorney fees under the statute. State Farm, on the other hand, argues that in order for attorney fees to be recovered under the statute, the actual loss must come from fire, tornado, lightning, or hail. It is undisputed that no tender was ever made by State Farm.

Interpretation of a statute is a question of law, and this court's review is unlimited. *Seabourn v. Coronado Area Council, B.S.A.,* 257 Kan. 178, 192, 891 P.2d 385 (1995). When interpreting a statute, the fundamental rule is that the intent of the legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, the court must give effect to the intent of the legislature as expressed rather than determining what the law should or should not be. *Davey v. Hedden,* 260 Kan. 413, 419, 920 P.2d 420 (1996).

In support of its argument that K.S.A. 40-908 applies only to those losses which actually occur as the result of fire, tornado, lightning, or hail, State Farm cites *Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co.,* 257 F.2d 93 (10th Cir. 1958). In *Millers',* the Tenth Circuit Court of Appeals interpreted G.S. 1949, 40-908, the predecessor statute to K.S.A. 40-908, in this manner. It determined that the type of loss rather than the type of policy issued controls. 257 F.2d at 102-03. In reaching this conclusion, the court noted that the statute had been amended before to include hail in response to this court's decision in *Ring v. Assurance Co.,* 100 Kan. 341, 343-44, 164 Pac. 303 (1917), wherein this court found that the statute did not apply to a hail insurance policy. *Millers',* 257 F.2d at 102 n.22. The *Millers'* court seemed to reason that if the type of policy rather than the type of loss controlled, there would have been no need to amend the statute to include hail.

*Millers'* also stated that to hold that the type of policy controlled would result in the anomalous situation in which attorney fees could not be recovered on a policy that insured only against a loss (in this case an explosion), but attorney fees could be recovered if the policy which insured against the explosion also covered losses by fire. 257 F.2d at 103 n.23. Accordingly, the court found that the type of loss, not the type of policy, controls and that in order for attorney fees to be recovered under the statute, the loss itself must be from fire, tornado, lightning, or hail. 257 F.2d at 102.

The decision in *Millers'* has not been followed in Kansas. Three years after *Millers'*, in *Ferrellgas Corporation v. Phoenix Ins. Co.*, 187 Kan. 530, 534-35, 358 P.2d 786 (1961), this court addressed the application of G.S. 1949, 40-908. In *Ferrellgas*, we stated that under the statute, "[i]f the policy is one insuring property as provided in [the statute], the insurance company must pay attorney fees as provided therein." 187 Kan. at 534. Accordingly, we found the statute applicable to damage caused by wind, noting that "[t]here can be no question about the authority of the court to allow attorney fees if, as we have now decided, G.S. 1949, 40-908 is still in effect." 187 Kan. at 535.

Similarly, in *Thomas v. American Family Mut. Ins. Co.*, 233 Kan. 775, 780, 666 P.2d 676 (1983), we found no error in the award of attorney fees under K.S.A. 40-908 to the plaintiff where the damage to his residence was caused by a windstorm. Both *Ferrellgas* and *Thomas* support the proposition that in determining whether K.S.A. 40-908 applies, the type of policy which provides recovery, rather than the type of loss, is the determining factor.

State Farm did not address *Ferrellgas* in its brief and was unfamiliar with it in responding to the court's questions. State Farm argues that the reasoning in cases such as *Thomas* is inapplicable and should not be followed because such cases did not directly address the question of whether type of policy or type of loss controls. Instead, State Farm urges that the reasoning of *Millers'* should be followed. However, this argument ignores the rather direct statement of the coverage of the statute in *Ferrellgas*. See 187 Kan. at 534-35. Moreover, the reasoning in *Millers'* has some obvious flaws.

The *Millers'* court based part of its conclusion on the amendment of the statute to provide for the allowance of attorney fees in policies insuring against hail loss. See 257 F.2d at 102. The trial court in this case was heavily influenced by the same amendment in its refusal to award Hamilton attorney fees. In denying Hamilton's request on this issue, the court stated:

"The legislative record is silent as to the intent of the drafters of the statute. The only clue to the legislature's intent is the fact that K.S.A. 40-908, when initially enacted in 1927, did not mention hail as one of the types of losses covered. The statute was subsequently amended to add hail. That amendment would seem to have been unnecessary had the [legislature] intended for any loss under such a policy to fall within the statute."

The flaw in the above reasoning is revealed by the statutory history. The amendment to K.S.A. 40-908 adding hail was enacted by the legislature in 1929. L. 1929, ch. 199, § 1. Prior to this amendment, in *Ring v. Assurance Co.*, 100 Kan. at 343-44, this court held that the statute did not apply to a loss under a hail insurance policy. However, the policy at issue in *Ring* was not one in which the same policy that provided coverage against hail loss also covered fire, tornado, or lightning. Instead, it is clear that the policy covered only hail loss. Thus, the amendment in 1929 is less an indication that the legislature meant the statute to cover only specific losses such as fire, tornado, lightning, or hail and more an indication that the legislature meant to bring hail insurance policies, such as the one in *Ring* that covered the insured's crops, within the protective umbrella of the statute.

The second line of reasoning employed by the court in *Millers'* was that allowing the type of policy rather than the type of loss to be determinative of the statute's application would result in the anomalous situation where attorney fees could be recovered if the loss came under a comprehensive policy which insured against both fire and the loss which occurred, in that case an explosion, while attorney fees could not be recovered if the loss came under a policy which insured only against explosion. See *Millers'*, 25 F.2d at 103 n.23. However, this situation is not so anomalous when the intent of the statute is considered.

In *Light v. St. Paul Fire & Marine Ins. Co.*, 132 Kan. 486, 490, 296 Pac. 701 (1931), we stated that the statute at issue is a public interest statute, prompted by the "pertinacious practices of insurance companies," that penalizes insurance companies for not making prompt payment of claims which are adjudged to have been meritorious. Later, in *Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 480-81, 163 P.2d 389 (1945), we stated that the purpose of K.S.A. 40-908 is not to penalize an insurance company for making what it deems tó be a bona fide defense to an action to recover on an insurance policy, but to permit the allowance of a fair and reasonable compensation to the assured's attorney in the event, after having been compelled to sue on the policy, he or she is successful in that effort.

We conclude K.S.A. 40-908 is designed to provide for attorney fees for the homeowner upon successful suit under the policy absent a tender by the insurance company. Fees shall be allowed as a part of the costs under the statute where the homeowner obtains judgment for a covered loss under the homeowner's policy, which judgment is in excess of any amount tendered by the insurance company before commencement of the action. Application of the statute is not dependent upon the type of loss incurred. Rather, providing all conditions of the statute are met, costs, including reasonable attorney fees, are awarded where policy coverage for the loss incurred by the insured homeowner exists.

The plain language of K.S.A. 40-908 supports such a conclusion. It provides application to any case in which a judgment is rendered on *any policy* given to insure any property against loss by fire, tornado, lightning, or hail. The policy coverage controls, not the actual type of loss. If the loss is covered by a policy which insures against fire, tornado, lightning, or hail, then the statute applies regardless of whether the actual loss occurred by one of those named causes or some other cause covered by the same policy. We conclude that the trial court erred in determining that K.S.A. 40-908 did not apply in this case and that Hamilton is entitled to his reasonable attorney fees under this statute.

As a result of our determination that K.S.A. 40-908 applies, we need not consider Hamilton's contention that he is entitled to recover attorney fees under K.S.A. 40-256.

## Prejudgment Interest

State Farm argues that the district court erred in awarding Hamilton prejudgment interest in the amount of $688.52. It contends that the claim for damages in this case was unliquidated and that prejudgment interest does not apply to unliquidated claims.

K.S.A. 16-201 provides for prejudgment interest on liquidated claims. A claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain or when the same become definitely ascertainable by mathematical computation. *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 686-87, 847 P.2d 1292 (1993).

State Farm argues that the damages in this case were not certain as evidenced by the fact that damages were left for the jury to determine. While it is true that the jury was allowed to determine damages, there was really no dispute regarding damages in this case. From the beginning, it was clear that Hamilton's damages were $4,750, the amount that he paid to repair the collapsed wall. The only question at issue was whether the collapse was covered under the policy. State Farm introduced no evidence to dispute the amount of damages and, indeed, made no attempt at all to allege that the claimed damages were in any way excessive. Although the jury was instructed to determine damages, the evidence left it with only one alternative once it decided coverage—to find damages in the amount of $4,750. No other amount would have been supported by the evidence. As a result, the damages were liquidated and the district court did not err in awarding Hamilton prejudgment interest.

Affirmed in part, reversed in part, and remanded.