**SCOTTSDALE INSURANCE COMPANY, Plaintiff,**

v.

**TRI–STATE INSURANCE COMPANY OF MINNESOTA and Commercial Group West, LLC, a North Dakota limited liability company, Defendants.**

No. A4–03–032.

United States District Court,
D. North Dakota,
Northwestern Division.

Feb. 20, 2004.

Richard Norval Jeffries, Jeffries Olson & Flom, PA, Fargo, ND, for Plaintiff.

Collin Paul Dobrovolny, McGee Hankla Backes & Dobrovolny, PC, William E. Bergman, Olson Burns Lee, Minot, ND, for Defendants.

HOVLAND, Chief Judge.

This is a declaratory judgment action initiated by Scottsdale Insurance Company, the insurer for Defendant Commercial Group West, LLC. The action arises out of damages sustained by modular units manufactured by Commercial Group West for Lake Metigoshe Properties, LLC. On January 9, 2004, Scottsdale Insurance filed a Motion for Summary Judgment and asserted that it is neither obligated to defend Commercial Group West in parallel state court proceedings nor pay for any water damage to the modular units. For the reasons stated below, the motion is denied.

## I. BACKGROUND OF THE CASE

The defendant, Commercial Group West (CGW), is a North Dakota corporation that is in the business of manufacturing and erecting modular buildings. Commercial Group West manufactures the modular units at its factory in Kenmare, North Dakota. Each modular unit is custom designed and complete from floor-to-ceiling. When completed, the top of the modular units are covered by reinforced plastic and transported to a construction site for assembly on a foundation provided by CGW. Once the modular units are assembled, the plastic covers are removed and a roof is built over the resulting structure.

On March 13, 2000, Lake Metigoshe Properties contracted with CGW to construct modular units and transport them to a site near Lake Metigoshe, North Dakota, where they were to be assembled to form a motel to be known as the Quilt Inn. On May 18, 2000, Commercial Group West subcontracted with a company known as DL Enterprise Construction to set the individual modules on a foundation and to construct the roof. DL Enterprise Construction began work on the Quilt Inn's roof on June 30, 2000. As DL Enterprise proceeded to construct the roof, the plastic material was pulled back in order to proceed with the roof construction. On July 2, 2000, a severe rainstorm occurred and the construction site was doused by heavy rain. The volume and weight of the rain water caused the plastic covering on the remaining unroofed modular units to rupture. The modular units sustained significant water damage in the amount of $270,000.

The record reveals that two competing theories emerged as to the cause of the damage to the modular units. The first theory advanced was that the modules' plastic covers had burst under the weight of pooling rainwater and thereby allowed the water to run into the modular units. The second theory advanced was that DL Enterprise Construction had caused the damage by dumping water into the modular units that had pooled in the modules' plastic covers.

Defendant Tri–State Insurance Company of Minnesota ("Tri–State Insurance"), a Minnesota corporation, insured Lake Metigoshe Properties at the time of the rain-

storm and paid out $270,000 to cover the repair and replacement of the damaged modular units. Tri–State Insurance subsequently commenced a subrogation action against CGW in North Dakota state court in August 2002, seeking indemnification from CGW under theories of negligence, breach of warranty, and strict liability.

CGW was insured by the plaintiff, Scottsdale Insurance, an Arizona insurance company, under a commercial general liability (CGL) policy at the time of the rainstorm. On September 27, 2002, Scottsdale Insurance sent a reservation of rights letter and retained separate defense counsel for CGW. Thereafter, Scottsdale Insurance initiated a declaratory judgment action against Tri–State Insurance and CGW, asserting that an exclusion ("Exclusion k. Damage to Your Product") contained in CGW's commercial general liability policy excluded coverage for the claims asserted by Tri–State Insurance against CGW in the underlying state court action. On November 18, 2003, Scottsdale Insurance filed a Motion for Summary Judgment. Scottsdale Insurance contends that there is no coverage afforded to its insured (CGW) under the undisputed facts because of the exclusion in the insurance policy.

## II. *POLICY AT ISSUE*

Section 1 of the commercial general liability policy issued by Scottsdale Insurance to CGW provides in relevant part the following:

### SECTION 1—COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"

seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \*

Under "2. Exclusions" on pages 1 and 4 of the CGL policy, the policy provides that:

This insurance does not apply to:

. . .

k. **Damage To Your Product**
"Property Damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The definitions portion of the CGL policy provides as follows:

20. "Your Product" means:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and
b. Containers (other than vehicles), materials, parts or equipment fur-

nished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to fitness, quality, durability, performance, or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or others property rented to or located for the use of other but not sold.

## III. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence

supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. LEGAL DISCUSSION

### A. GOVERNING LAW

■ North Dakota law governs the interpretation of the insurance policy at issue in this case. *See National Union Fire Ins. Co. of Pittsburgh v. Terra Industries, Inc.*, 346 F.3d 1160, 1164 (8th Cir.2003). In *Fisher v. American Family Mut. Insurance Company*, 579 N.W.2d 599, 602 (N.D.1998), the North Dakota Supreme Court held that "the interpretation of an insurance policy, including whether it is ambiguous, is a question of law." Thus, the determination of the legal effect of the insurance contract between Scottsdale Insurance and CGW is a question of law for the Court to resolve.

The North Dakota Supreme Court has stated the following with respect to the interpretation of insurance contracts:

A term in an insurance policy should be construed to mean what a reasonable person in the position of the insured would think it meant. Limitations or exclusions from broad coverage must be clear and explicit. When the language of an insurance policy is clear and explicit, the language should not be strained in order to impose liability on the insurer. However, any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted. Ex-

clusions from broad coverage in an insurance policy are strictly construed against the insurer. An exception to an exclusion from broad coverage results in coverage.

*Fisher v. American Family Mut. Insurance Co.,* 579 N.W.2d 599, 602 (N.D.1998).

## B. SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Scottsdale Insurance argues in its Motion for Summary Judgment that the commercial general liability insurance policy issued to CGW does not cover the water damage sustained by the modular units built for Lake Metigoshe Properties. Specifically, Scottsdale Insurance contends that the exclusion entitled "**Exclusion k. Damage To Your Product**" precludes coverage for any property damage consisting of repair or replacement of the damaged modular units.

In response, Tri–State Insurance and CGW contend that the policy language is vague ambiguous, and would lead an insured to believe that the loss was covered under the circumstances. Together, they dismiss the notion that "**Exclusion k. Damage To Your Property**" applies because: (1) the modular units belonged to Lake Metigoshe Properties and not to CGW at the time of the loss; (2) at the time of the loss the modular units were affixed to real property and constituted real property, thereby falling within the real property exception to the exclusion; and (3) the insurance policy's particularized declaration of coverage takes precedence over general policy provisions and an exclusion.

1. The CGL policy provides that the insurance does not apply to "**Damage To Your Product**" which includes property damage to "your product". In accordance with the definitions portion of the CGL policy, "Your Product"

## 1) OWNERSHIP OF THE MODULAR UNITS AT THE TIME OF LOSS

■ The Court is not persuaded by Tri–State Insurance's and CGW's assertion that the exclusion in question does not apply because CGW was no longer the owner of the modular units at the time of the loss on July 2, 2000. Neither Tri–State Insurance nor CGW have cited any authority to support this assertion. In addition, neither "Exclusion k" nor the definition of "Your Product" contains any reference to the passing of ownership. Rather, it appears that the exclusion refers to a product "manufactured, sold, handled, distributed, or disposed of" by the insured, regardless of when the property damage occurred or who the owner was at the time.

## 2) "YOUR PRODUCT" V. "REAL PROPERTY"

■ Tri–State Insurance and CGW contend that the exclusion entitled "**Exclusion k. Damage To Your Product**" is inapplicable by virtue of the fact that the modular units had been affixed to real property at the time of the loss and constituted real property which is an exception to the exclusionary clause at issue.[1] For support, they cite to several courts and commentators for the proposition that a building would be considered "real property" for purposes of "Exclusion k." *See Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.,* 126 F.3d 886, 892 (7th Cir.1997) (the "your product" exclusion did not preclude coverage to an architectural firm for negligence of general contractor's building; even assuming firm's "product" was the building, exclusion (k)

means "[a]ny goods or products, *other than real property,* manufactured, sold, handled, distributed, or disposed of by the insured." (emphasis added).

presumably would be inapplicable by its terms); *see also* Emy Poulad Grotell, *Understanding the Basics of Commercial General Liability Policies*, 652 PLI/Lit 63, 77 (Practising Law Institute, Litigation and Administrative Practice Course Handbook Series, 2001) (where the commercial general liability policy definition of "your product" expressly excludes real property, the "your product" exclusion will not apply to the named insured who is erecting a building); F. Malcolm Cunningham, Jr. & Amy L. Fischer, *Insurance Coverage in Construction–The Unanswered Question*, 33 Tort & Ins. L.J. 1063, 1094–95 (Summer 1998) ("Real property" was deleted from the definition of "product" in the 1986 form CGL policy, "clarifying that work on homes, buildings, or other structures is not considered to be the insured's 'product.' ").

To distinguish the present case from *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 126 F.3d 886 (7th Cir.1997), Scottsdale Insurance differentiates the prefabricated modular units manufactured by CGW from traditional buildings that are constructed by contractors. Specifically, Scottsdale Insurance asserts that "**Exclusion k. Damage To Your Property**" precludes coverage because a prefabricated module is not a building, but rather a product that is used to construct a building. Scottsdale Insurance asserts that this exclusion precludes coverage for damage to the insured's own work or product caused by such work or product.

"Exclusion k" mirrors a similar exclusion construed by the North Dakota Supreme Court in *Fisher v. American Family Mutual Insurance Company*, 579 N.W.2d 599 (N.D.1998). In *Fisher*, the plaintiff sought to collect proceeds from an insurer on a judgment entered pursuant to a *Miller v. Shugart*[2] agreement. At issue, among other things, was the application of several exclusions contained in the insurance policy that addressed damage to the insured's "product" or "work"[3] Applying the many exclusions at issue in that case, the North Dakota Supreme Court concluded that the insurance policy covered damage to the property upon which the insured was working, but the policy did not cover the insured's work or the insured's product. The court reasoned as follows:

> The injury to products or work exclusion is intended to exclude insurance for damage to the insured's product or work. Thus, the exclusion does not apply where the product or work causes damage to other persons or property. In such a situation, while there would not be coverage for damage to the work or product itself, damages caused by the product to other work or products would be covered.

*Fisher v. American Family Mut. Ins. Co.*, 579 N.W.2d 599, 605 (N.D.1998).

When applying the reasoning of *Fisher* to the present case, it arguably appears that the exclusion entitled "**Exclusion k.**

---

**2.** "Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), an insured defendant may enter into a stipulation to settle a plaintiff's claims and stipulate to the entry of a judgment which may be collected only from the proceeds of any insurance policy, with no liability to the defendant." *Medd v. Fonder*, 543 N.W.2d 483, 485 (N.D.1996).

**3.** The policy at issue in *Fisher* contained the following exclusions addressing damage to "work" or "product" caused by the insured's "work" or "product":

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the 'products-completed operations hazard.'

This exclusion does not apply if the damaged work or work out of which the damage arises was performed on your behalf by a subcontractor.

*Fisher*, 579 N.W.2d 599, 605 (N.D.1998).

Damage To Your Product" would preclude coverage for damage to CGW's products. However, CGW's products are defined under the insurance policy as "[a]ny goods or products, *other than real property,* manufactured, sold, handled distributed, or disposed" of by the insured. (emphasis added) There is no dispute that the modular units are in and of themselves "products" as contemplated by CGW's commercial general liability insurance policy. Nevertheless, the significant issue upon which the parties differ in this case, as compared to *Fisher,* is whether damage to the modular units would fall under the real property exception to "Exclusion k" once the modular units are assembled and anchored to real property.

■ North Dakota law expressly provides that real property consists of land; that which is affixed to land; that which is incidental or appurtenant to land; and that which is immovable by law. N.D. Cent. Code § 47–01–03; *see* N.D. Cent.Code § 47–01–02. North Dakota law further provides that

> [a] thing is deemed to be affixed to the land when it is attached by the roots, as in the case of trees, vines or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.

N.D. Cent.Code § 47–01–05 (defining the term "fixture"); *see Woolridge v. Torgrimson,* 59 N.D. 307, 229 N.W. 805, 806 (1930) (Fixtures, such as a barn, when permanently attached to the soil, are part of the real estate.). When applying these statutes in determining whether a modular unit or building affixed to land constitutes real property as opposed to personal property, it is well-established that North Dakota courts "look to the intention of the parties, the manner in which the article or

building is annexed, and its adaption to the use of the realty." *Gray v. Krieger,* 66 N.D. 115, 262 N.W. 343, 344 (1935); *see Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733, 735 (N.D.1988) (determining whether a building that had been purchased and moved on to the land of the purchaser became a fixture under N.D. Cent.Code § 47–01–05).

In this case, the record clearly establishes that the modular units were attached or affixed to the foundation prior to the time that the units sustained water damage. The annexation was made in an inherently permanent manner which would establish the modular units as part of the real estate. Thus, it falls upon Scottsdale Insurance to show that the modular units remained personal property after being assembled and permanently attached or affixed to the real estate. Notably, there is nothing in the record to demonstrate that CGW and Lake Metigoshe Properties agreed or otherwise intended that the modular units were to remain personal property once they were assembled and affixed to the foundation. *See Gray v. Krieger,* 66 N.D. 115, 262 N.W. 343, 344 (1935) (recognizing that buildings "may by agreement of the parties interested be considered personal property"). The Court notes that Scottsdale Insurance has acknowledged that ". . . the modular units were combined to make a motel which, when totally completed, may ultimately and presumably constitute real property. . . ." *See* Plaintiff's Brief in Support of Summary Judgment, p. 15.

Scottsdale Insurance relies upon a Washington case entitled *Federated Service Ins. Co., v. R.E.W., Inc.,* 53 Wash. App. 730, 770 P.2d 654 (1989), for the proposition that the modular units retained their status as a product or as personal property following assembly for the pur-

poses of invoking "Exclusion k." The Court disagrees.

In *Federated Service Insurance*, the insured constructed storage rooms for a fruit grower. The liners of these storage rooms proved to be defective and had to be replaced by the insured. The insurer refused to cover the cost of replacing the liners and contended that the insured's commercial general liability policy excluded coverage for such expense. The trial court held that damage to the buildings constructed by the insured which was caused by the use of defective materials constituted damage to the insured's product and, therefore, fell within the CGL policy's "insured's product" exclusion. 53 Wash.App. 730, 770 P.2d 654, 657. The insurance policy and exclusions at issue in *Federated Service Insurance*, were different from the CGL policy and exclusions presented in this case. The Court finds that the Washington state court decision is of limited value.

■■ As previously noted, it is well-established under North Dakota law that any limitations or exclusions from broad coverage in an insurance policy must be clear and explicit and are to be strictly construed against the insurer. *Fisher v. American Family Mut. Insurance Company*, 579 N.W.2d 599 (N.D.1998). The policy definition of "your product" expressly excludes real property, but the policy fails to define the term "real property" which has created ambiguity, uncertainty, and reasonable doubt as to its meaning in this case. The insurance policy does not address the attributes of CGW's operation and the unique dilemma it would pose in circumstances where damage occurs to the CGW modular units after they have been assembled and affixed to real estate. Scottsdale Insurance was aware that the modular units were being used to construct a motel building and the company has acknowledged that the modular units

are considered to constitute real property once finally assembled. There is also no dispute that the loss occurred after the modular units had been assembled and affixed to the foundation but before the roof was totally completed. The Court finds that the modular units as constructed, assembled, *and* affixed to the foundation for incorporation into a motel constituted "real property" as defined under North Dakota law. As such, the modular units fall within the exception to the exclusion advanced by Scottsdale Insurance as a basis to deny coverage.

■ It is also well-established under North Dakota law that any ambiguity or reasonable doubt as to the meaning of an insurance policy is to be strictly construed against the insurer and in favor of the insured. The Court finds that the exclusion entitled "**Exclusion k. Damage To Your Product**," and the policy definition of "your product", are vague and ambiguous. The Court further finds that the above-entitled exclusion, *and particularly the real property exception to the term "your product" as contained in the exclusion*, is not clear and explicit so as to warrant a denial of coverage. Giving CGW the benefit of the doubt, and strictly construing the real property exception to the exclusion against the insurer (Scottsdale Insurance), the Court finds that the language of the commercial general liability policy supports a reasonable interpretation that would impose liability on Scottsdale Insurance. The Court cannot conclude that the assembled and affixed modular units constitute personal property as opposed to real property under the facts presented. The Court also finds that a reasonable insured in the position of CGW would have believed that coverage existed under the commercial general liability policy issued by Scottsdale Insurance. As a result of this deci-

sion, the Court need not address the scope or effect of the insurance policy's separate endorsement for products/completed operations coverage.

## V. CONCLUSION

The Motion for Summary Judgment (Docket No. 23) filed by the plaintiff, Scottsdale Insurance Company, is **DE-NIED.**