(104 P.3d 997)
No. 90,944

LEE BUILDERS, INC., *Appellee/Cross-appellant,* v. FARM BUREAU MUTUAL INSURANCE COMPANY, *Appellant/Cross-appellee.*

Opin-
ion filed January 28, 2005.

*Paul Hasty, Jr.*, and *Patrick E. McGrath*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant/cross-appellee.

*Jacob S. Graybill*, of Patterson, Gott & Graybill, and *John Terry Moore*, of Moore Martin, L.C., for appellee/cross-appellant.

Before PIERRON, P.J., MALONE and HILL, JJ.

PIERRON, J.: Farm Bureau Mutual Insurance Company (Farm Bureau) appeals the district court's judgment of indemnity in favor of Lee Builders, Inc. (Builders) on an insurance coverage issue, contending that a commercial general liability policy provided no coverage for Builder's claim. Farm Bureau also appeals the district court's award to Builders of prejudgment interest under K.S.A. 16-201 and attorney fees under K.S.A. 40-908. We affirm in part and reverse in part, concluding that the policy provided coverage for a portion of Builders' claim, but we remand for further proceedings to determine the amount of the covered claim. We vacate the award of prejudgment interest, but we affirm the award of attorney fees.

*Factual and Procedural Background*

Builders served as general contractor in building a custom home for Dr. Richard Steinberger in Wichita. Builders was insured under a commercial general liability policy issued by Farm Bureau; the language of the relevant policy provisions and exclusions will be referenced and discussed below. The initial construction of the home was completed in December 1991, with much of the work performed by Builders' subcontractors.

Nearly 5 years later, Steinberger claimed that water leaks had developed and that water had leaked into the wall cavities of the exterior walls of the house, which over time had caused rotting of the boxing, splitting of the stucco seams, and other collateral dam-

age. The precise reason for the leakage was never determined, but among the probable causes were: (i) defective windows, which had been provided directly by Builders; (ii) negligent installation of the windows by Builders' subcontractors; or (iii) improper application of the stucco exterior by subcontractors. After Steinberger made a claim, Builders in turn timely notified Farm Bureau of the claim, but Farm Bureau denied coverage.

Following the denial of coverage, Builders proceeded to join with the window manufacturer, the window retailer, and the stucco installer in negotiating a settlement of Steinberger's claim at a total cost to Builders of $12,956.92, but there remains an issue whether the entire amount was expended on work or materials necessitated by the events triggering coverage.

In October 2001, Builders filed suit against Farm Bureau seeking to recover the full amount Builders paid to settle Steinberger's claim, i.e., $12,956.92, plus interest and attorney fees under K.S.A. 40-256 and K.S.A. 40-908. Builders alleged Farm Bureau breached its duty under the insurance policy to defend or indemnify Builders against Steinberger's property damage claim and Farm Bureau's wrongful refusal to provide coverage and indemnify Builders caused Builders to mitigate its damages to prevent Steinberger from suing Builders.

The parties filed competing motions for summary judgment. The district court denied both motions. In doing so, however, the court made several important findings. With regard to Builders' motion, the court found: (1) it was uncontroverted that Steinberger never filed a lawsuit against Builders; (2) pursuant to the insurance contract, Farm Bureau had the duty to defend a lawsuit; (3) pursuant to the insurance contract, Farm Bureau had the option to investigate; (4) because there was no lawsuit filed against Builders, Farm Bureau did not breach its duty to defend; however, this finding did not alter whatever damages Builders might be entitled to receive as a result of a breach of the duty to indemnify; and (5) material issues of fact remained in dispute regarding the settlement amount claimed by Builders, thereby precluding summary judgment.

With regard to Farm Bureau's motion, the court found: (1) in constructing Steinberger's house, Builders exclusively used sub-

contractors to perform the work; (2) the window leaks were neither expected nor intended by Builders; (3) the window leaks began after construction of the house was completed; (4) Steinberger's house was real property; (5) the claimed damage arising from the window leaks was caused by an "occurrence" as defined by the insurance policy; and (6) the house was Builders' "work" as defined by the policy.

The parties convened for a jury trial. Before testimony began, however, the court determined that no material issues of fact remained and granted Builders' oral motion for judgment on the merits for the entire amount of the Steinberger settlement, plus prejudgment interest and costs. The court thereafter awarded Builders attorney fees of $76,200 pursuant to K.S.A. 40-908 but rejected Builders' request for attorney fees pursuant to K.S.A. 40-256.

Farm Bureau timely appeals. Builders timely cross-appeals the district court's refusal to award attorney fees under K.S.A. 40-256.

*Standard of Review*

This court is not bound by the district court's interpretation of the policy at issue, as we have unlimited review over the interpretation of an insurance contract. See *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003).

A district court's allowance of prejudgment interest is reviewed for abuse of discretion. *Blair Constr. Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002). Judicial discretion is abused only when no reasonable person would take the view adopted by the district court. 273 Kan. at 690.

The issue of whether the district court had authority to impose attorney fees under a particular statute is a question of law over which an appellate court has unlimited review. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

*Did the District Court Err in Concluding that the Indemnity Provisions in the Farm Bureau Policy Provided Builders Coverage for the Claim Made by Steinberger?*

Farm Bureau argues that the indemnity provisions in its policy were not triggered by Steinberger's claim because there was no "occurrence" as defined in the policy. The argument is that the breach of a defined contractual duty was not an "accident" because it was within the insured's control and management and should not be considered an undesigned or unexpected event. The parties concede that the question whether these circumstances constitute an "occurrence" under a commercial general liability policy is one of first impression in Kansas.

The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy also provided:

"a. [Farm Bureau] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result. . . .

"b. This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

(2) The 'bodily injury' or 'property damage' occurs during the policy period."

Concisely stated, the issue is whether moisture leakage or penetration over time due to defective materials or workmanship in a construction project, which leads to structural damage within the object constructed, should be considered an "occurrence" when defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" under a commercial general liability policy. Indeed, we find no Kansas authority directly addressing this issue; we begin, however, with Kansas authority generally discussing and construing a similar definition of "occurrence."

In *Brumley v. Lee*, 265 Kan. 810, 816, 963 P.2d 1224 (1998), our Supreme Court construed a homeowner's policy that included liability insurance for an "occurrence" defined as "an accident, including exposure to conditions which results, during the policy period, in bodily injury or property damage." Facing the precise issue

whether "accident" should be determined from the perspective of the insured or from that of the victim, the court quoted treatise law for the general proposition that the term "accident" is inherently ambiguous and then held the policy should be liberally construed in favor of the insured:

"13 Appleman, Insurance Law and Practice § 7486, P. 632 (1976) provides:

'The absence of any definition of the term "accident" in the policy merely means that an interpretation by law shall apply rather than an interpretation by contractual language. And where it is not defined in the policy, it must be interpreted in its usual, ordinary and popular sense. The word will, however, be accorded a liberal construction since it is ambiguous.'

. . . .

"We hold that the lack of any definition for 'accident' in the Safeco policy and the failure to specify from whose standpoint the accident determination is to be made when more than one insured is involved weighs in favor of finding ambiguity in the 'occurrence' definition and, therefore, construction in favor of the insured." 265 Kan. at 822, 824-25.

Although not controlling here, *Brumley* instructs our analysis to the extent that the "occurrence" definition may be ambiguous in its incorporation of the term "accident" without further elaboration.

Builders urges us to adopt the rationale and holding from courts in other jurisdictions that have broadly construed "occurrence" as inclusive of construction defects causing property damage during the policy term. For example, Builders cites *Iberia Parish School v. Sandifer & Son*, 721 So. 2d 1021 (La. App. 1998), where the court held that a leaking roof due to defective workmanship and materials was an accident and thus an occurrence under a policy employing the identical definition of "occurrence" as here, reasoning:

"The roof leaked. That was an accident or 'occurrence.' The roof leaked allegedly because improper construction caused damage to it and made it leak. As a result, the roof had to be replaced. . . . [T]here are allegations in our present case that defective workmanship and defective materials caused continuous exposure to rain at the school, which caused the roof to leak. This allegedly resulted in property damage because the roof had to be replaced. This allegedly improper construction causing damage to the roof triggered an 'occurrence' under the terms of the present policy." 721 So. 2d at 1024.

In urging this interpretation as the better rule, Builders relies upon such cases from several other jurisdictions that have come to similar conclusions in nearly identical circumstances. See, *e.g.*, *High Country v. New Hampshire Ins. Co.*, 648 A.2d 474 (N.H. 1994) (where faulty design, materials, and workmanship that resulted in substantial moisture seepage into building constructed considered occurrence); *Kalchthaler v. Keller Construction Co.*, 224 Wis. 2d 387, 591 N.W.2d 169 (Wis. App. 1999) (where faulty workmanship that resulted in water entering leaky windows and wrecking drapery and wallpaper considered occurrence).

Although not cited by Builders, we note that our federal brethren have clearly concluded that Kansas courts would adopt the rule that damage occurring as a result of faulty or negligent workmanship constitutes an occurrence as long as the insured did not intend for the damage to occur. See, *e.g.*, *American States Ins. Co. v. Powers*, 262 F. Supp. 2d 1245, 1249 (D. Kan. 2003); *Fidelity & Deposit of Maryland v. Hartford Cas.*, 189 F. Supp. 2d 1212, 1216-18 (D. Kan. 2002) (where court analyzes prior Kansas opinions in determining that the Kansas Supreme Court would adopt rule). See also *Federated Mut. Ins. Co. v. Grapevine Excavation*, 197 F.3d 720, 725-26 (5th Cir. 1999) (holding, under Texas law, that damage to a parking lot caused by negligent construction constituted an accident because it was an "unexpected, unforeseen or undesigned happening or consequence").

In contrast, Farm Bureau urges us to adopt the holding and rationale of courts in other jurisdictions that have narrowly construed such policies as not inclusive of such claims when they stem solely from breach of contractual obligations, because breach of a defined contractual duty cannot and should not be described as an accident. See, *e.g.*, *Norwalk Ready Mixed Concrete v. Travelers Ins.*, 246 F.3d 1132 (8th Cir. 2001) (applying Iowa law); *Hawkeye-Security Ins. Co. v. Davis*, 6 S.W.3d 419 (Mo. App. 1999). We disagree that these and other cases cited by Farm Bureau have application here because: (i) they address situations where no property damage was caused, such as mere unfinished work; or (ii) they involve claims to replace or repair defective material which caused

no property damage; or (iii) they construe and apply policy exclusions rather than indemnity provisions.

Moreover, we note that a specific exception in Farm Bureau's policy to the "your work" exclusion for subcontractor work is inconsistent with Farm Bureau's narrow interpretation of "occurrence." Although the policy expressly excludes coverage for "your work" as defined, this exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Builders argues that if "occurrence" is narrowly defined as urged by Farm Bureau, the subcontractor proviso would be rendered meaningless. We agree with Builders and adopt the rationale of one authoritative commentator, who states:

> "If the policy's exclusion for damage to the insured's work contains a proviso stating that the exclusion is inapplicable if the work was performed on the insured's behalf by a subcontractor, it would not be justifiable to deny coverage to the insured, based upon the absence of an occurrence, for damages owed because of property damage to the insured's work caused by the subcontractor's work. Reading the policy as a whole, it is clear that the intent of the policy was to cover the risk to the insured created by the insured's use of a subcontractor. Moreover, if coverage were never available for damage to the insured's work because of a subcontractor's mistake, on the theory that there was no occurrence even under those circumstances, the foregoing subcontractor proviso to the exclusion for damage to the insured's work would be meaningless, and if possible, policies should not be interpreted to render policy provisions meaningless." Windt, Insurance Claims and Disputes, § 11.3, Supp. p. 48 (4th ed. 2001).

Farm Bureau argues that if we broadly construe "occurrence" to include such circumstances, the general liability policy would be transformed into a performance bond. We reject this argument on the same basis that it has been rejected by federal courts in Kansas, specifically that a performance bond does not insure the contractor, it runs to the benefit of the third-party owner only. See *American States Ins. Co. v. Powers*, 262 F. Supp. 2d at 1249; *Fidelity & Deposit of Maryland*, 189 F. Supp. 2d at 1218; Turner Insurance Coverage Disputes: 2d, § 6:46, pp. 6-118 (West 2001). We distinguish *Owings v. Gifford*, 237 Kan. 89, 697 P.2d 865 (1985), for three fundamental reasons: (i) the claims at issue in *Owings* were based on contractor negligence but failed to allege damage to prop-

erty; (ii) the court in *Owings* relied on the "your work" exclusion in a policy that predated the addition of the subcontractor exception discussed above; (iii) the court in *Owings* specifically recognized that "[p]rovisions of a general liability policy provide coverage only if the insured work or product actively malfunctions, causing injury to an individual or damage to another's property." 237 Kan. at 94. Unquestionably, as argued by Builders, the changes wrought by the 1986 revisions to the broad form commercial general liability (CGL) coverage (including the subcontractor exception) have extensive implications in coverage disputes arising since the revisions. See, *e.g.*, *O'Shaughnessy v. Smuckler Corp.* 543 N.W.2d 99, 102-05 (Minn. App. 1996).

We conclude that property damage to surrounding structural components caused by moisture seepage resulting from faulty work constitutes an occurrence under this general contractor's CGL policy because: (i) the policy definition specifically includes within the term "accident" the "continuous or repeated exposure to substantially the same general harmful conditions"; (ii) our Supreme Court has indicated that an occurrence is avoided only when an act results in an intentional injury; see, *e.g.*, *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 687, 512 P.2d 403 (1973); (iii) to construe "occurrence" more narrowly would render other policy provisions and exclusions meaningless; (iv) to the extent that this policy definition or the precise phrase construed is ambiguous, we construe the policy against the insurer; see *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 36, 744 P.2d 840 (1987). The faulty materials and workmanship, especially those provided by Builders' subcontractors, caused a continuous exposure of the substructure of the Steinberger home to the general harmful conditions inherently imposed by moisture from the elements in Kansas. The district court did not err in concluding that the indemnity provisions of the policy were triggered by such an occurrence.

*Did the District Court Err in Concluding that the Policy Exclusion for "Your Product" Did Not Apply?*

Farm Bureau contends that, even if there was an occurrence, coverage was excluded by express language in the policy disclaim-

ing applicability for property damage to "your product." Farm Bureau argues that Builders supplied, alternatively as its "product," either the windows and related materials or the entire house. These arguments are unaccompanied by any authority suggesting that this is an appropriate construction and application of the policy exclusion. The policy language of the "your product" exclusion states:

"[This insurance does not apply to:] '[p]roperty damage' to 'your product' arising out of it or any part of it."

. . . .

" 'Your product' means:
   a. Any goods or products, *other than real property*, manufactured, sold, handled, distributed or disposed of by:
       (1) You;

       . . . .
   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
"Your product" includes:
   a. Warranties or representatives made at any time with respect to the fitness, quality, durability, or use of 'your product; and
   b. The providing of or failure to provide warnings or instructions." (Emphasis added.)

Farm Bureau first argues that the product provided by Builders was principally the windows themselves. Indeed, Builders provided the windows, but the claim amount sought by Builders did not include the cost of (or any property damage to) the windows; in fact, the window retailer rebated the entire cost of these windows and applied this amount toward the cost of replacement windows in the settlement. Accordingly, no aspect of Builders' claim included "property damage to [windows]," and the "your product" exclusion had no application for this reason. To the extent that Farm Bureau claims on appeal that lumber or other material was also provided as Builders' product, there is no factual support in the record for this claim and it must be rejected. See *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 777, 27 P.3d 1 (2001).

Farm Bureau next argues that the product provided by Builders was the entire custom home constructed for Steinberger. Builders argues that if this is the case, their product was real property and

therefore expressly outside of the "your product" exclusion. We agree. In fact, a broad reading of the real property exception to the "your product" exclusion for insured contractors has been suggested by at least one authoritative commentator, who has also criticized attempts to deny coverage on this basis:

"This [specific exception of real property under the "your product" exclusion] provides meaningful clarification that work performed by contractors on dwellings, buildings, structures, and other realty is not considered to be the named insured's product. Some insurers have used the injury to products exclusion of the [prior universal CGL policy form] to deny completed operations losses that would otherwise have been covered under the [revised version]. Similar denials of coverage under the new CGL forms are clearly incorrect." Holmes' Appleman on Insurance 2d, § 132.9, p. 151 (2002).

Although not cited by either party, cases are legion that similarly construe and apply the real property exception to the "your product" exclusion. See, *e.g.*, *Prisco Serena Sturm Architects v. Liberty Mutual*, 126 F.3d 886, 892 (7th Cir. 1997); *Scottsdale Ins. Co. v. Tri-State Ins. Co. of Mn.* 302 F. Supp. 2d 1100 (D. N. D. 2004); *American States Ins. Co*, 262 F. Supp. 2d 1245; *Brosnahan Builders v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517 (D. Del. 2001); *Wanzek Const. v. Employers Ins.*, 679 N.W.2d 322 (Minn. 2004); see also Grotee, *Understanding the Basics of Commercial General Liability Policies*, 652 Pract. L. Inst. 63, 77, (Lit. and Adm. Practice Course Handbook Series 2001) (where the CGL policy definition of "your product" expressly excludes real property, the "your product" exclusion will not apply to the named insured who is erecting a building); Cunningham and Fischer, *Insurance Coverage in Construction-The Unanswered Question*, 33 Tort & Ins. L.J. 1063, 1094-95 (Summer 1998) ("real property" was deleted from the definition of "product" in the 1986 form CGL policy, "clarifying that work on homes, buildings, or other structures is not considered to be the insured's product").

Consistent with these authorities, we broadly construe the real property exception to the "your product" exclusion, especially where the insured is a contractor whose broad form liability coverage was apparently intended to be expanded by the exception. Accordingly, we conclude that the district court did not err in find-

ing that the "your product" exclusion did not bar coverage of Builders' claim.

*Did the District Court Err in Concluding that Farm Bureau's Failure To Provide Coverage and Indemnity Obligated Farm Bureau to the Entire Amount Paid in Settlement?*

Farm Bureau next argues that the district court erred in entering judgment for the entirety of Builders' claim because components of the claim were unrelated to the "occurrence" that triggered coverage. As its prime example, Farm Bureau asserts that the judgment amount included the cost of placing steel reinforcement along the studs on the tallest portion of Steinberger's home, a cost wholly unrelated to the continuous exposure of the substructure to the general harmful conditions inherently imposed by moisture from the elements in Kansas. Although Farm Bureau stipulated that the monies paid by Builders in settlement to Steinberger "were fair and reasonable for the service and materials supplied," Farm Bureau consistently argued that this was no concession that it should be liable for all amounts paid, whether or not related to the "occurrence." Farm Bureau urged the district court to allow the jury to determine which components of the settlement were occasioned by Farm Bureau's failure to indemnify under the policy and argues the court's failure to do so was error. We agree.

Our court faced a similar issue in *Aselco, Inc. v. Hartford Ins. Group*, 28 Kan. App. 2d 839, 21 P.3d 1011 (2001), and held that a breach of the duty to defend does not deprive the insurer of coverage defenses, whatever their nature. The court reasoned:

"[W]e believe the cases decided to this point mean our Kansas Supreme Court would not adopt a bright line rule that insurers who fail to provide a defense and reserve their rights are inevitably equitably estopped from raising their coverage defenses. We are persuaded that an insured in [Plaintiff's] position should not automatically reap coverage without limits. Hartford is therefore free to argue in the district court that, despite the breach of its duty to defend and its failure to reserve rights, Aselco did not contract for coverage for this loss." 28 Kan. App. 2d at 851.

Similarly, we do not believe that Farm Bureau's inaction on Builders' claim should result in liability for the entire cost of set-

tlement with Steinberger, whether or not related to the occurrence that triggered coverage. Accordingly, we reverse the district court's judgment and remand for a factual determination of the costs incurred by Builders in the settlement with Steinberger that were caused by the continuous exposure of the substructure to moisture from the elements in Kansas. We recognize that this determination may or may not be cost justified from the perspective of the parties and that Builders' attorney fees necessitated by this determination will undoubtedly be the subject of another motion for fees, but Farm Bureau properly reserved this issue on appeal, and the potential inclusion of noncovered damages in the judgment necessitates further proceedings.

### Did the District Court Err in Awarding Prejudgment Interest?

Farm Bureau next argues that the district court erred in awarding prejudgment interest under K.S.A. 16-201 because the necessary factual determination of covered damages precluded any liquidated amount subject to such interest. Having concluded that such a factual determination was indeed necessary, we agree and vacate the award of prejudgment interest. When the amount of damages is not finally determined until the jury makes the requisite factual determination, prejudgment interest cannot be awarded. *Lisbon v. Heatcraft, Inc.*, 23 Kan. App. 2d 374, 378-79, 930 P.2d 1096 (1997).

### Did the District Court Err in Awarding Attorney Fees?

Farm Bureau finally argues that the district court erred in awarding attorney fees pursuant to K.S.A. 40-908. Importantly, Farm Bureau does not challenge the amount of the attorney fee award. An issue not briefed is deemed waived or abandoned. *Goldbarth v. Kansas State Board of Regents*, 269 Kan. 881, 884, 9 P.3d 1251 (2000).

Farm Bureau acknowledges that the policy, rather than the type of loss, dictates the applicability of K.S.A. 40-908. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 882, 953 P.2d 1027 (1998) (if loss covered by policy that insures property against fire, tornado, lightning, or hail, K.S.A. 40-908 applies regardless of

whether actual loss occurred by one of those causes). Farm Bureau contends, however, that this statute applies only to *property* insurance claims and, thus, is inapplicable to the present general liability claim.

In contrast, Builders maintains the district court had authority to award attorney fees under K.S.A. 40-908 because Farm Bureau's policy insured property against risk of loss by fire, tornado, lightning, or hail and Builders obtained a judgment on *that policy*. Indeed, as the district court stated, Builders had but one policy with Farm Bureau, and that policy provided multiple coverages: commercial property coverage, commercial general liability coverage, and commercial inland marine coverage. Farm Bureau does not dispute that the policy included coverage for damaged property resulting from fire, tornado, lightning, or hail.

K.S.A. 40-908 provides:

"[I]n all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs."

In *Hamilton*, the district court denied a request for attorney fees under K.S.A. 40-908 because the losses associated with collapse of a basement wall were not caused by fire, tornado, lightning, or hail. On appeal, our Supreme Court reversed and remanded for a determination of reasonable attorney fees, holding K.S.A. 40-908 applied because *the policy* covered loss from fire, tornado, lightning, or hail. The court explained:

"Application of [K.S.A. 40-908] is not dependent upon the type of loss incurred. Rather, providing all conditions of the statute are met, costs, including reasonable attorney fees, are awarded where policy coverage for the loss incurred by the insured homeowner exists.

"The plain language of K.S.A. 40-908 supports such a conclusion. It provides application to any case in which a judgment is rendered on *any policy* given to insure any property against loss by fire, tornado, lightning, or hail. The policy coverage controls, not the actual type of loss. If the loss is covered by a policy which insures against fire, tornado, lightning, or hail, then the statute applies

regardless of whether the actual loss occurred by one of those named causes or some other cause covered by the same policy." 263 Kan. at 882.

See also *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 128, 689 P.2d 1187 (1984) (rejecting argument that purpose of K.S.A. 40-908 is to benefit homeowners and that statute should not be extended to benefit commercial entities; stating because nothing in statutory language suggests such limitation, " '[p]laintiff,' as used in statute, includes both corporate and non-corporate parties").

Here, Builders sued to recover on an insurance policy which, in part, insured property against loss by fire, tornado, lightning, or hail. By its very language, K.S.A. 40-908 applies in cases in which judgment is rendered on a *policy* that insures against these types of losses. *Hamilton*, 263 Kan. at 882; *United States Fidelity & Guaranty Co. v. Maish*, 21 Kan. App. 2d 885, 906, 908 P.2d 1329 (1995). Accordingly, we hold that the district court did not err in finding Builders was entitled to attorney fees under K.S.A. 40-908.

Because we decide that the award of attorney fees under K.S.A. 40-908 is affirmed, Builders' cross-appeal challenging the district court's conclusion that K.S.A. 40-256 was inapplicable is rendered moot.

*Summary and Conclusion*

The district court is affirmed on all issues regarding coverage by Farm Bureau's policy of Builders' claim. We have concluded, however, that the district court erred in granting Builders judgment for the entire Steinberger settlement, and we reverse and remand for a factual determination of the amount resulting from the occurrence. The revised judgment shall not be entitled to prejudgment interest, but the district court's award of attorney fees is affirmed. Builders' cross-appeal is moot.

Affirmed in part, reversed and vacated in part, and remanded for further proceedings consistent with this opinion.